FILED
2019 Feb-14  PM 12:50
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) | COMPLAINT |
| AMERICAN FREIGHT MANAGEMENT COMPANY, LLC d/b/a AMERICAN FREIGHT FURNITURE AND MATTRESS | ) ) ) ) | |
| Defendant. | ) ) ) | JURY TRIAL DEMAND |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 ("Title VII") to correct unlawful employment practices on the basis of sex, and to provide appropriate relief to female applicants who were denied employment because of their sex. As alleged with greater particularity in Paragraph 14(a)-(g) below, since at least January 1, 2013, Defendant American Freight Management Company, LLC d/b/a American Freight Furniture and Mattress ("American Freight" or "Defendant") has intentionally denied and continues to deny employment to female applicants seeking sales and warehouse jobs at Defendant's stores nationwide because of their sex.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were, and are now being committed, in numerous locations across the United States, including within the jurisdiction of the United States District Court for the Northern District of Alabama, Southern Division. Venue is appropriate in this Court.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant has continuously been a Delaware corporation, headquartered in Delaware, Ohio and has continuously done business in the State of Alabama and Jefferson County, Alabama, and has continuously had at least 15 employees.

5.      At all relevant times, Defendant has been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6.    More than thirty days prior to the institution of this lawsuit, Synethia Leonard ("Leonard"), a female, filed a charge with the Commission alleging violations of Title VII by Defendant.

7.    During the reasonable course of the Commission's investigation of the charge, the Commission uncovered information which supported a charge of nationwide, sex-based hiring discrimination by Defendant in violation of Title VII.

8.    On November 5, 2014, the Commission notified Defendant that it was expanding the scope of the investigation to include potential nationwide, sex-based hiring discrimination in violation of Title VII.

9.    On October 19, 2017, the Commission issued Defendant a Letter of Determination finding reasonable cause to believe Defendant violated Title VII and inviting Defendant to join the Commission in conciliating the matter.

10.    The Commission engaged in conciliation discussions with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11.    The Commission was unable to secure from Defendant an acceptable conciliation agreement, and, on April 19, 2018, the Commission issued Defendant a Notice of Failure of Conciliation,

12.    All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

13.     Defendant operates approximately 150 warehouse-style discount furniture stores across the United States, specializing in furniture and mattress sales. The stores are in Alabama, Arkansas, Connecticut, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, West Virginia, and Wisconsin.

14.     Since at least 2013, Defendant has engaged in unlawful employment practices at its stores nationwide in violation of Section 703(a) of Title VII, 42 U.S.C. U.S.C. 2000e-2(a). These unlawful practices include, but are not limited to, the following:

a)     Since at least 2013, Defendant has intentionally excluded from employment qualified female applicants seeking sales and warehouse jobs at Defendant's stores nationwide in favor of hiring equally or less qualified male applicants. For example, in or around September 2013, after learning from store employees that open positions were available, Synethia Leonard attempted to obtain employment at the Trussville, Alabama store. The Store Manager told her no positions were available but to return and apply after the Thanksgiving holiday as positions would be available then. Leonard did as she was told and applied in-person for any open position. Defendant never contacted Leonard, and did not retain her employment application. Soon after she submitted her application, Defendant hired at least five males to work at the store, at least three of whom were equally or less qualified than Leonard.  Upon information and belief, at the time of these incidents, Defendant's store had no female employees.

b)     Since at least 2013, Defendant's hiring practices have constituted a pattern or practice of discrimination against women based on their sex.

c)    The chart below illustrates some of the sex-based disparities in Defendant's hiring of warehouse workers between January 2013 and January 2016 at many of its stores across the country:

| | | |
|---|---|---|
| Columbus, OH metro stores | about 323 warehouse hires | 0 females |
| Cincinnati, OH metro stores | about 191 warehouse hires | 0 females |
| Detroit, MI metro stores | about 121 warehouse hires | 0 females |
| Grand Rapids, MI metro stores | about 123 warehouse hires | 0 females |
| Indianapolis, IN metro stores | about 219 warehouse hires | 1 female |
| Pittsburgh, PA metro stores | about 221 warehouse hires | 0 females |
| Akron, OH metro stores | about 172 warehouse hires | 0 females |
| Huntsville, AL metro stores | about 107 warehouse hires | 0 females |
| Jacksonville, FL metro stores | about 139 warehouse hires | 0 females |
| Louisville, KY metro stores | about 156 warehouse hires | 0 females |
| St. Louis, MO metro stores | about 115 warehouse hires | 0 females |
| Charleston, SC metro stores | about 94 warehouse hires | 0 females |
| Chicago, IL metro stores | about 71 warehouse hires | 0 females |
| Lafayette, IN metro stores | about 104 warehouse hires | 0 females |

d)    To further illustrate the sex-based disparities in Defendant's hiring of warehouse workers, in 2013, Defendant hired approximately 821 warehouse workers nationwide, only about 10 (1.2%) of these workers were female, compared to a representation rate of 6.9% female warehouse workers nationwide. In 2014, Defendant hired approximately 1,061 warehouse workers nationwide, but only about 13 (1.2%) were female, compared to a 6.9% representation rate of female warehouse workers. Similarly, in 2015, out of approximately 1,364 warehouse workers Defendant hired, only about 35 (2.6%) were female, compared to a 6.0%

representation rate of female warehouse workers. The difference between the expected hiring of women into warehouse jobs and Defendant's actual hiring of women is statistically significant, exceeding three standard deviations.

        e)     The following chart illustrates the sex-based disparities in Defendant's hiring of sales workers, between January 2013 and January 2016, at many of Defendant's store across the country:

| | | |
|---|---|---|
| Columbus, OH metro stores | about 181 sales hires | 35 females |
| Pittsburgh, PA metro stores | about 159 sales hires | 32 females |
| Miami, FL metro stores | about 134 sales hires | 38 females |
| Orlando, FL metro stores | about 157 sales hires | 39 females |
| Mobile, AL metro stores | about 57 sales hires | 9 females |
| Buffalo-Niagara Falls, NY metro stores | about 46 sales hires | 2 females |
| Baton Rouge, LA metro stores | about 38 sales hires | 5 females |
| Jacksonville, FL metro stores | about 36 sales hires | 0 females |
| Chicago, IL, Joliet, IN and Naperville, WI metro stores | about 35 sales hires | 2 females |
| Grand Rapids, MI metro stores | about 31 sales hires | 0 females |
| Tampa-St Petersburg - Clearwater metro area | about 29 sales hires | 1 female |
| Evansville, IN metro stores | about 22 sales hires | 0 females |

        f)     In 2013, Defendant hired approximately 388 sales workers nationwide, only about 125 (32.2%) were female, compared to a 48.7% representation rate of women sales workers in the furniture store industry. Out of approximately 580 sales workers hired in 2014, about 194 (33.4%) were female, compared to a 48.9% representation rate of women sales

workers in the furniture store industry nationwide. Likewise, in 2015, out of approximately 792 sales workers Defendant hired in 2015, only about 259 (14.1%) were female, compared to a 47.7% representation rate of women sales workers in the furniture store industry across the country. These hiring disparities evince statistically significant shortfalls of female sales workers at Defendant's stores nationwide that exceed three standard deviations.

g)   Corporate management made final store-level hiring decisions and excluded women from employment. Former Store Managers witnessed corporate management discard the employment applications of female applicants. Corporate managers told Store Managers not to hire women because women "complain and make trouble." Former store employees also heard Store Managers say Defendant did not hire women because women: "bitch too much;" are too much of "a distraction" to the male employees; cannot work in the warehouse because "women can't lift," and women do not "do as great a job at selling furniture as men."

15.   The effect of the practices complained of in Paragraph 14(a)-(g) above has been to deprive female applicants of equal employment opportunities and otherwise adversely affect their status as applicants because of sex.

16.   The unlawful employment practices complained of in Paragraph 14(a)-(g) above were and are intentional.

17.   The unlawful employment practices complained of in Paragraph 14(a)-(g) above were done with malice or with reckless indifference to the federally protected rights of female applicants.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant, its officers, successors, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in employment practices that discriminate on the basis of sex.

B.      Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for female applicants and that eradicate the effects of their past and present unlawful employment practices.

C.      Order Defendant to make whole aggrieved female applicants[1] by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices including, but not limited to, rightful-place hiring of qualified female applicants, and, where appropriate, front pay and instatement.

D.      Order Defendant to make whole aggrieved female applicants by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

E.      Order Defendant to make whole aggrieved female applicants by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain, suffering, humiliation, and inconvenience in amounts to be determined at trial.

F.      Order Defendant to pay aggrieved female applicants punitive damages for Defendant's malicious and reckless conduct, as described above, in amounts to be determined at trial.

---

1 The Commission is not seeking monetary relief for Synethia Leonard.

G.     Grant such further relief as the Court deems necessary and proper in the public interest.

H.     Award the Commission its costs of this action.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its complaint.

RESPECTFULLY SUBMITTED,

James L. Lee
Deputy General Counsel

Gwendolyn Young Reams
Associate General Counsel

U.S. Equal Employment Opportunity
Commission
131 M. Street E
Washington, DC 20507

MARSHA L. RUCKER (PA Bar # 90041)
Regional Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Birmingham District Office
Ridge Park Place, Suite 2000,
1130 22nd Street, South
Birmingham, Alabama 35205
Telephone: (205) 212-2046
Facsimile: (205) 212-2041