FILED
2019 Apr-29  PM 05:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| PLAINTIFF, | ) ) | CIVIL ACTION NO. |
| V. | ) ) | 2:19-CV-00273-JHE |
| AMERICAN FREIGHT MANAGEMENT COMPANY, LLC | ) ) ) | |
| DEFENDANT | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT AMERICAN FREIGHT MANAGEMENT COMPANY, LLC's MOTION TO DISMISS

### I.    Introduction

The EEOC's Complaint should be dismissed under Rule 12(b)(6).[1]  It seeks to bring a "pattern or practice" claim applicable only in EEOC Section 707 claims, but seeks remedies—compensatory and punitive damages—available only in Section 706 claims.  [Doc. 1 at ¶ 3 and §§ E-F in "prayer for relief"].  For this reason, as well as the related issues of the distinct remedies and processes permitted by each statute that implicate manageability and constitutional concerns, the Court should dismiss the EEOC's complaint.

---

[1] The Court is undoubtedly well aware of the appropriate standard under Rule 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In the alternative, even if the EEOC *could have* brought a pattern or practice claim under Section 706, it was required to state facts in its Complaint to support the intentional discrimination claim it seeks to bring.  But the EEOC fails in its Complaint to identify any individual who was allegedly denied employment by American Freight for whom it could seek relief.   Accordingly, the EEOC's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.    Procedural History

Synethia Leonard filed a charge of discrimination on January 13, 2014, alleging that American Freight discriminated against her based on her sex by failing to hire her after she allegedly applied for a job at its Trussville, Alabama location. [Exhibit A].[2] Twenty-two months after receiving the charge, in November 2015, the EEOC informed American Freight for the first time that the agency was expanding the scope of its investigation to examine alleged nationwide conduct. [Doc. 1 at ¶ 7]. Eventually, more than four years after filing her charge and after requesting and receiving a Notice of Right to Sue, Ms. Leonard filed a lawsuit against American Freight.  Ms. Leonard's lawsuit was dismissed with prejudice on December 22, 2017 pursuant to the parties' Joint Stipulation of Dismissal.

---

[2] While the charge is technically outside the pleadings, the Court may consider it without converting this motion to one for summary judgment because the document is "(1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005).

*Leonard v. American Freight*, 17-cv-665-MHH, N.D. Ala. Dec. 22, 2017 (Doc. 21).[3]

More than a year after the disposition of Ms. Leonard's claim, the EEOC initiated the instant action on February 14, 2019.  Ms. Leonard's charge is the *only* charge the EEOC cited as a basis for its expansive, speculative suit.  And, although Ms. Leonard can no longer accept any relief for herself from American Freight given the dismissal of her claims with prejudice, Ms. Leonard is the only allegedly aggrieved individual identified by the EEOC in this action against American Freight. Nonetheless, the EEOC, relying exclusively on Section 706 as its statutory basis, alleges a nationwide "pattern or practice" of discriminatory hiring practices and seeks compensatory and punitive damages, in addition to other relief, for some mythical group of "aggrieved female applicants."  [*See* Doc. 1].

## III.  The EEOC Cannot Maintain a "Pattern or Practice" Claim under Section 706

### A.  *Background*

1.  <u>The Relevant Differences Between Sections 706 and 707 and the Different Types of Relief Afforded by Each</u>

The EEOC is vested with authority to investigate, conciliate, and in particular circumstances, litigate alleged discriminatory employment practices. 42 U.S.C. §§ 2000e-4 *et seq*. Sections 706 (42 U.S.C. § 2000e-5) and 707 (42 U.S.C.

---

[3] The dismissal order in Ms. Leonard's lawsuit may also be considered without converting this motion to one for summary judgment because it is central to the plaintiff's claim and undisputed.

§ 2000e-6) provide the bases and circumstances under which the EEOC can exercise its relevant litigation authority.

There are differences in the EEOC's authority under each statute. By its plain language, Section 707 applies only when the EEOC "has reasonable cause to believe that any person or group of persons is engaged in a *pattern or practice* of resistance to the full enjoyment" of rights guaranteed by Title VII. 42 U.S.C. § 2000e-6(a) (emphasis added). The statute goes on to use the term "pattern or practice" three more times, providing that if the "*pattern or practice* is of such a nature and is intended to deny" the subject rights, the EEOC may initiate a civil action, "setting forth the facts pertaining to such *pattern or practice.*" *Id*. The statute further provides that, if it prevails, the EEOC can obtain certain relief "against the person or persons responsible for such *pattern or practice.*" *Id*. (emphasis added).[4]

Section 706 is different. It does not contain the words "pattern or practice" anywhere in its text. *See* 42 U.S.C. § 2000e-5. Instead, it permits the EEOC, if successful in convincing a court "that the [employer] has intentionally engaged in or is intentionally engaging in an unlawful employment practice[,]" to obtain certain remedies. 42 U.S.C. § 2000e-5 (g)(1). Thus, while Section 707 is aimed at

---

[4] Originally, the Attorney General had the duty to enforce "pattern or practice" Section 707 suits, but Congress transferred this authority to the EEOC in 1974. 42 U.S.C. § 2000e-6(c).

"pattern or practice" conduct, Section 706 targets "an unlawful employment practice."

Section 706 and Section 707 also differ with respect to the relief available. Prior to Congress' amendment of Title VII in 1991, neither Section 706 nor Section 707 plaintiffs could recover compensatory or punitive damages. *See id.* (enacted in 1991). In 1991, Congress changed that, amending Title VII to permit compensatory and punitive damages for actions arising under Section 706—which does not reference "pattern or practice." *Id.* It left alone the remedies available under Section 707—which repeatedly describes its subject matter as being limited to "pattern or practice" type claims. *See id.* (containing no amendments to Section 707). The 1991 amendments are also significant because, for the first time, they authorized juries to adjudicate fact issues in Title VII claims, but only in those situations where a complaining party seeks compensatory or punitive damages. 42 U.S.C. § 1981a(c). These situations, necessarily, cannot include Section 707 claims because compensatory and punitive damages are not permitted under Section 707.

>    2.    <u>The Different Proof Mechanisms Used in 706 Claims and 707 "Pattern or Practice" Claims and their Pre-1991 Origin</u>

Congress amended Title VII in 1991 with the benefit of a robust body of Title VII law that had already existed for years. Between the initial enactment of Title VII in 1964 and the amendment in 1991, courts developed processes by

which Title VII plaintiffs should advance their claims and by which defendants could defend them.  Those processes included summary judgment burden shifting for individual claims and answering the difficult question of how, exactly, courts should adjudicate Section 707 claims challenging an employer's "pattern or practice."

For individual claims brought pursuant to Section 706, the Supreme Court developed the now-ubiquitous *McDonnell Douglas* summary judgment burden shifting test.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). This test is still used today for individual claims or even, if the EEOC is a party, for analyzing the claims of groups of identifiable aggrieved individuals.  *See EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272-73 (11th Cir. 2002) (using *McDonnell Douglas* in an EEOC Section 706 action brought on behalf of a group of aggrieved individuals).

For pattern or practice claims arising under Section 707, the Supreme Court developed a different proof mechanism.  In 1977, when considering a Section 707 claim brought by the Government, the Supreme Court rejected the use of the *McDonnell Douglas* test as the only means of proving circumstantial discrimination, and it embraced a different proof method for Section 707 pattern or practice claims.  "The plaintiff in a pattern-or-practice action is the Government, and its initial burden is to demonstrate that unlawful discrimination has been a

regular procedure or policy followed by an employer . . . ." *International Broth. of Teamsters v. U.S.*, 431 U.S. 324, 360 (1977). Again referring to a "pattern or practice" suit, the Court held that during the initial stage of such an action, "the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy." *Id*. Instead, it must show "that such a policy [of regular discrimination] existed." *Id*. Essentially, the EEOC must show that discrimination is the company's "standard operating procedure." *Id*. at 335. In this method, known as the *Teamsters* framework, the EEOC can satisfy its "standard operating procedure" burden through statistical and anecdotal evidence. If the EEOC succeeds, "[t]he burden then shifts to the employer to defeat the prima facie showing of a pattern or practice by demonstrating that the Government's proof is either inaccurate or insignificant." *Id*. at 360. The fact-finder would then decide whether the evidence supports a "pattern or practice" finding. If it does, then the matter proceeds to the second stage.

The net result is that such actions are bifurcated, with the first step consisting of adjudicating whether the employer had a widespread "pattern or practice" of discrimination, and the second stage (if necessary) addressing whether the employer's conduct as to particular individuals was done in furtherance of the discriminatory practice. At the second stage, the employer must overcome the

presumption, as to each individual, that at acted in accordance with a discriminatory policy.

The Court went on to note that, if the EEOC is successful in proving this type of claim, "a *trial court* may then . . . determine the appropriate remedy." *Id.* at 361 (emphasis added). This is significant because the Supreme Court developed this proof mechanism in the context of a trial court—not a jury—fashioning an appropriate remedy for "pattern or practice" claims.

     B.    *The Plain Meaning of the Statutes and Congress' Intent When Amending Remedies for One and Not the Other Demonstrate that the EEOC Cannot Bring Section 706 Pattern or Practice Suits*

The state of the law immediately prior to the 1991 amendment was that the EEOC could pursue "pattern or practice" claims via Section 707, and claims for individuals or groups of aggrieved individuals through Section 706, with the remedy for either violation being limited to those based in equity and as determined by a trial court, not a jury. Courts worked under this dichotomy for Section 706 and 707 claims. *See EEOC v. Shell Oil Co.*, 466 U.S. 54, 62 (1984) (citing Section 706 as the basis of when the Commissioner can file a charge on behalf of an aggrieved individual, and Section 707 for when the Commissioner suspects "pattern or practice" conduct). As the Eleventh Circuit later observed:

> The Supreme Court noted long ago [in 1977] that 'the 'pattern or practice' language in § 707(a) of Title VII was not intended as a term of art.' Regardless of what Congress may or may not have intended, the phrase has come through common usage to represent the sum total

of the evils Congress intended to attack in § 707(a) of the Civil Rights
Act of 1964.  We use it thus.

*Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 965 (11th Cir. 2008)
(internal citations omitted) (abrogated on other grounds). In other words, the
common usage of "pattern or practice" claims in the courts is, and has been for a
long time, that, if brought by the EEOC, pattern or practice claims *are* Section 707
claims.

In 1991, when Congress modified Section 706 to allow for compensatory
and punitive damages, and to allow for jury trials where compensatory and
punitive damages are at issue, it left Section 707 unaltered.   42 U.S.C. §
1981a(a)(1), (c).  The most logical interpretation of Congress's amendment is that
it intended to provide compensatory damages, punitive damages, and jury trials to
Section 706 claimants while leaving Section 707 "pattern or practice" claims
alone. In interpreting statutes, courts should be "[b]uoyed by [their] common
sense" and "not throw [it] overboard." *United States v. Haun*, 494 F.3d 1006, 1010
(11th Cir. 2007).  The common sense reading of the amendment is that Congress
did not intend to bequeath upon the EEOC for Section 707 claims, described in the
statute as "pattern or practice" claims, the same remedies and procedures used in
Section 706 actions.  If it had, the most logical reading is that Congress would have
said so. It did not.  The available remedies and procedure for Section 707 "pattern
or practice" claimants remained unaltered by the 1991 amendments.

This conclusion is buttressed by another cannon of statutory construction. Courts should "presume that, in amending a statute, Congress has knowledge of prior judicial interpretation of the statute." *Miljkovic v. Shafritz and Dinkin, P.A.*, 791 F.3d 1291, 1299 (11th Cir. 2015). Thus, Congress in 1991 is presumed to have knowledge that Section 707 involved "pattern or practice" claims and the *Teamsters* proof framework, and that Section 706 did not except for private-plaintiff class action cases.

As a result, the 1991 amendments changed only compensatory/punitive damages and jury trials in Section 706 claims, and left Section 707, and its more limited equitable remedies and bench trials, as the only vehicle by which the EEOC could pursue "pattern or practice" claims. For this reason alone, based in statutory construction and a common sense interpretation of the associated statutory history, the EEOC cannot—to use the apt idiom employed by another district court—"have its cake and eat it too." *EEOC v. CRST Van Expedited, Inc.*, 611 F. Supp. 2d 918, 934 (N.D. Iowa 2009). It cannot maintain this "pattern or practice" case seeking compensatory damages, punitive damages, and a jury trial under Section 706.

### C. The Different Text in Sections 706 and 707 Demonstrate that they are Aimed at Combatting Different Conduct

There is a difference between widespread discrimination and a singular act of discrimination, even if the singular act allegedly harms multiple individuals.

Based on their differing text, Sections 707 and 706 are aimed at those distinct harms.  "A § 707 case is a 'pattern or practice' case that challenges systemic, wide spread discrimination by an employer. Conversely, a § 706 case seeks to vindicate, sometimes on a class-wide basis, the rights of aggrieved individuals who are challenging an unlawful employment practice by an employer."  *EEOC v. Mitsubishi Motor Mfg. of America, Inc.*, 990 F. Supp. 1059, 1084 (C.D. Ill. 1998). The *Mitsubishi* Court described the difference as subtle but meaningful.  "The distinction is subtle and not immediately apparent from the language of Title VII, but *it is nonetheless, an important distinction*."  *Id.* (emphasis added).

The subtle differences in the text of the statutes, as recognized in *Mitsubishi*, supports this interpretation. Section 706 permits remedies where the employer "has intentionally engaged in or is intentionally engaging in *an* unlawful employment practice . . . ."   42 U.S.C. § 2000e-5(g)(1) (emphasis added).  Unlawful employment practices are described elsewhere as acts of discrimination or retaliation.  *See* 42 U.S.C. § 2000e-2, e-3.  The use of "an", a singular term, rather than "a series of" or a "pattern or practice of" is significant.  It is also the same term used in other portions of Section 706 describing the predicate acts on which a charge (and subsequent suit) can be based:  "[w]henever a charge is filed . . . alleging that an employer . . . has engaged in *an* unlawful employment practice . . . ."  42 U.S.C. § 2000e-5(b) (emphasis added).  The use of the singular "an," rather

than some other term contemplating a common widespread practice, like "pattern or practice," shows that Section 706 is aimed at and only provides remedies for singular "unlawful employment practices."

In contrast, when Congress wanted to address discrimination of a different nature, such as conduct amounting to a "pattern or practice" of discrimination, it said so. It used different words. Section 707 authorizes the EEOC to bring suit when it has "reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter . . . ." 42 U.S.C. § 2000e-6(a). Section 707 has a different goal than Section 706. One (Section 707) is aimed at repetitive widespread "pattern or practice"-type conduct, while the other (Section 706) is designed, by its own words, at combatting singular acts. As the *Mitsubishi* Court recognized, the difference is subtle but important.

Because of this difference, wholly independent from the 1991 amendment but consistent with its implicit underlying rationale, it would run afoul of those statutes to permit the EEOC to bring a Section 706 "pattern or practice" claim. The Court should dismiss the EEOC's claim because the text of Section 706 limits its scope—and remedies—to singular acts, not widespread "pattern or practice" type conduct as contemplated in Section 707.

D.    *Other, Well-Reasoned, Judicial Guidance Supports the Statutory Interpretation that the EEOC Cannot Bring Section 706 "Pattern or Practice" Claims*

The dichotomy between Sections 706 and 707, and their respective remedies and proof requirements, certainly appears to have been the Eleventh Circuit's historical understanding as well.  There are no Eleventh Circuit cases holding that the EEOC can pursue a pattern or practice claim under Section 706.  Instead, the Eleventh Circuit has described EEOC pattern or practice cases as arising *only under Section 707* and as only allowing equitable remedies:

> *Section 707(a)* of the Civil Rights Act of 1964, U.S.C. § 2000e-6(a), entitles the Government to bring a *pattern or practice claim* on behalf of a class of similarly situated employees for declaratory and injunctive relief against an ongoing act of intentional discrimination in violation of Title VII.  A pattern or practice claim for such relief may also be brought under Title VII as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(2), by one or more of the similarly situated employees. In addition to praying for declaratory and injunctive relief, the complaint may also seek back pay on behalf of individual class members who have been injured by the employer's discriminatory practice.

*Davis*, 516 F.3d at 964-65 (emphasis added) (internal citations omitted); *see also EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000) (identifying *only* Section 707 as a basis for the EEOC to bring a pattern or practice-claim).

The Eleventh Circuit mentioned *only* Section 707 and private Rule 23(b)(2) class actions, which are injunctive/declaratory relief class actions, as potential bases for bringing "pattern or practice" claims.  It said *nothing* about how they

could also be brought by the EEOC under Section 706, as the EEOC is attempting to do now.  The Eleventh Circuit also described the potential remedies for "pattern or practice" claims as being limited to declaratory relief, injunctive relief, and back pay—all of which are equitable forms of relief contemplated by Section 707.  The *Davis* Court said *nothing* about how "pattern or practice" claimants could also recover compensatory and punitive damages, as permitted by Section 706 since 1991 and as the EEOC attempts to do now.  *Id*.

District courts from other circuits have addressed the issue and endorsed American Freight's position.  "[B]ased on the plain language of the Civil Rights Act of 1991, . . . the EEOC may not seek punitive or compensatory damages for individuals pursuant to its pattern or practice claims."  *EEOC v. JBS USA, LLC*, No. 10-cv-02103, 2011 WL 3471080, at *8 (D. Colo. Aug. 8, 2011).  The *JBS* Court explicitly held that the EEOC could not proceed under the *Teamsters* proof framework for any claim where it sought compensatory or punitive damages: "because compensatory and punitive damages are only available pursuant to the EEOC's § 706 claims, . . . the EEOC *must* proceed under the traditional *McDonnell Douglas* burden-shifting framework . . . ."  *Id*. (emphasis added); *see also EEOC v. JBS USA, LLC*, No. 8:10cv00318, 2012 WL 12898225, at *3 (D. Neb. Sept. 28, 2012) ("[T]he *Teamsters* method of proof for pattern or practice claims is only available to the EEOC under Section 707.").

Another Court reasoned that if the EEOC is successful in establishing that it can bring "pattern or practice" claims under Section 706, it would "render § 707 a mere redundancy in the law." *EEOC v. CRST Van Expedited, Inc.*, 611 F. Supp. 2d 918, 934 (N.D. Iowa 2009). That is, if both statutes allow for the same proof models and the same type of relief, then Section 707 is superfluous—an outcome clearly contrary to canons of statutory construction. *See NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30 (1937) ("The cardinal principle of statutory construction is to save and not destroy.").

   E.   *Other Courts From Other Circuits Have Interpreted Section 706 Incorrectly*

While the Eleventh Circuit has never held that the EEOC can bring Section 706 pattern or practice claims, two other courts of appeals have. Contrary to the text of the statutes themselves and the impact of the 1991 amendment, the Sixth Circuit and Fifth Circuit have held that that the EEOC could bring such actions. *Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012); *EEOC v. Bass Pro Outdoor World, LLC*, 826 F.3d 791 (5th Cir. 2016). This Court is not bound by the decisions of those decisions and should reject following them in this matter for several reasons.

First, neither the *Serrano* Court nor the *Bass Pro* Court considered the impact of the different text of the statutes describing the prohibited conduct with which each is concerned—with one empowering the EEOC to combat "an

unlawful employment practice" (Section 706) and the other vesting it with authority to litigate widespread "pattern or practice" conduct (Section 707). This failure alone, discussed *supra*, demonstrates why this Court should reject the reasoning in both opinions and instead grant American Freight's motion.

Second, the rationale contained above makes more practical sense and is more in line with the underlying statutes and Supreme Court authority, as articulated by Judge Jolly of the Fifth Circuit. After a panel from the Fifth Circuit issued the *Bass Pro* opinion, the Fifth Circuit, in a 7-7 vote, denied re-hearing the issue *en banc*. *EEOC v. Bass Pro Outdoor World, LLC*, 865 F.3d 216 (5th Cir. 2017). Writing for six of the judges who voted to re-hear the case, Judge Jolly wrote that the *Bass Pro* opinion "gives a blind pass to Title VII's statutory framework . . . render[ing] § 707 meaningless and superfluous [and] merg[ing] the two statutes [Section 706 and 707]." *Id*. at 219. His reasoning is consistent with American Freight's position:

> Importantly, § 707 contains the words "pattern or practice of [discrimination]'; § 706 does not. And, importantly, in 1991, Congress amended § 706 to allow for compensatory and punitive damages. Congress *did not* correspondingly amend § 707, which, by contrast only provides for equitable relief when the EEOC is seeking to represent a mass.

*Id*. at 218. (internal citations omitted). He added, "[t]hat Congress enacted the right to damages in § 706 suits demonstrates that Congress understood that its provisions for punitive and compensatory damages were not designed for mass

'pattern or practice' cases, certainly not those involving 50,000 unnamed plaintiffs." *Id*. at 221. Like in *Bass Pro,* the EEOC seeks relief now for a mass of unnamed and unknown individuals. For this reason, Judge Jolly and the five judges who joined his opinion, concluded "this 'pattern or practice' case cannot be brought under § 706 or § 707 as to provide individualized compensatory and punitive damages . . . ." *Id*. at 219.

Judge Jolly also addressed the potential redundancy of Section 707. That is, permitting the EEOC to proceed with a Section 706 "pattern or practice" claim would render § 707 superfluous, an outcome that would violate base foundational tenets of statutory construction. The *Bass Pro* Court and the Sixth Circuit *Serrano* opinion addressed this concern by pointing out that there are still some minor differences between the statutes. *Serrano*, 699 F.3d at 895-96. Judge Jolly and his five colleagues responded:

> Section 707, however, must be afforded some meaning. But under the panel's holding, the EEOC has obviated the need for § 707; it can achieve the same result as well as punitive and compensatory damages by bringing a § 706 claim. Still the panel advances the notion (in a footnote) that § 707 is at least not *technically* superfluous because private individuals may intervene in a § 706 suit, and because the EEOC may request a three-judge panel in a § 707 suit. Respectfully, it is unrealistic that the EEOC would choose such inconsequential procedural technicalities under § 707, that is, excluding private intervenors and seeking a three-judge panel, to the exclusion of seeking compensatory and punitive damages for victims of discrimination under § 706. In short, the panel opinion will serve as the elegy for § 707.

*Bass Pro*, 865 F.3d at 220-21 (internal citations omitted).

Judge Jolly and the half of the Fifth Circuit that voted to re-hear the *Bass Pro* case *en banc* have the right of it. Courts are not required to throw out their common sense when interpreting statutes and, as Judge Jolly predicted, interpreting the interplay between Section 706, Section 707, and 42 U.S.C. §1981a so as to permit the EEOC to bring Section 706 "pattern or practice" suits will leave Section 707 a practical statutory redundancy. The Court need look no further than the Complaint in this very action for evidence of that redundancy. Unlike in *Bass Pro*, where the EEOC sought relief under both Section 706 and 707, it has only cited Section 706 as a basis for relief here. As Judge Jolly predicted, if the EEOC's position is adopted, Section 707 is obsolete. This Court should reject the non-binding reasoning of both the *Bass Pro* and *Serrano* opinions.

F. *Manageability and Constitutional Concerns Prohibit EEOC Section 706 "Pattern or Practice" Cases*

Besides the statutory construction issues, Judge Jolly and his colleagues rejected EEOC Section 706 "pattern or practice" cases for two other reasons, both of which this Court should also adopt.[5] First, "allowing pattern or practice suits for individualized compensatory and punitive damages poses insurmountable manageability concerns." *Id*. at 219. Second, when these suits seek legal relief, as

---

[5] The Sixth Circuit *Serrano* opinion did not consider either of these issues.

opposed to equitable relief, for large numbers of people under the *Teamsters* framework, they "necessarily run afoul of the Seventh Amendment." *Id*.

Regarding the manageability issues, the 1991 amendment, giving juries the power to award individuals compensatory and punitive damages, makes the *Teamsters* proof framework unmanageable and inappropriate.   In an opinion containing reasoning later adopted by the Eleventh Circuit, the Fifth Circuit identified the problem:  "[b]y injecting jury trials into the Title VII mix, the 1991 Act introduced, in the context of class actions, potential manageability problems with both practical and legal, indeed constitutional, implications." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 410 (5th Cir. 1998) (later relied on in *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001)).

The Eleventh Circuit reasoned, in the class action context, that compensatory damages cannot be obtained by individuals when the issues associated with compensatory damages are too individualized.  *See Murray*, 244 F.3d at 812 (Rejecting non-equitable remedies for individuals in a class action because "[p]laintiffs do not seek damages as a 'group remedy'" and, as a result, their individualized damage issues would predominate over their claims for equitable relief).  The same concern is present here, if not amplified, because the EEOC is not required to meet Rule 23's requirements to bring a class action.  In a mass action like the one the EEOC is attempting to bring now, it is simply

unmanageable, and thus not allowed, for the Court to have a jury consider individualized compensatory and punitive damage claims. *See Cooper v. Southern Co.*, 390 F.3d 695, 720 n.14 (11th Cir. 2004) (overruled on other grounds) (rejecting the use of a bifurcated process in a Title VII private class action employment case as contemplated by *Teamsters*, when, as here, "highly individualized awards of compensatory and punitive damages are at stake" because "the Civil Rights Act of 1991 . . . changed the landscape of employment discrimination law by making available compensatory and punitive damages (as well as the right to trial by jury) in Title VII cases").

The Eleventh Circuit recognized this manageability issue before and rejected the use of the *Teamsters* proof framework in a similar circumstance. In a would-be 42 U.S.C. § 1981 class action where the putative class consisted of Jewish customers alleging discriminatory denial of service, the proffered class sought compensatory and punitive damages for the group. *Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228 (11th Cir. 2000). It also asked the Court to implement the *Teamsters* proof framework. The Eleventh Circuit held the individualized compensatory damage issues necessarily predominated over the common issues, rendering class certification inappropriate. *See id*. 1240 (holding the class should not be certified because of "the profoundly individualistic nature

of each plaintiff's claim for damages, and the complete lack of judicial economy" associated with adjudicating those claims).

In rejecting the class's argument that the court should use *Teamsters*, the court recognized that the *Teamsters* proof framework is only viable *when equitable damages are at issue*. "[T]he relief to which individual plaintiffs were entitled after a finding of a pattern or practice of discrimination in *Teamsters* (and in all subsequent cases employing the *Teamsters* rationale) was *equitable* in nature." *Id*. at 1239. The opinion contrasted *equitable* relief with the compensatory and punitive relief the class sought: "[i]n the instant case, plaintiffs have prayed for compensatory and punitive damages . . . . These forms of relief are anything but equitable in nature; they are, in fact, the very definition of *legal* relief." *Id*. For this manageability concern—the individualized nature of legal remedies as opposed to equitable remedies—the Court denied the plaintiffs' attempt to use the *Teamsters* proof mechanism where compensatory and punitive damages are at issue. *Id*.; *see also July v. Board of School Com'rs*, 291 F.R.D. 653, 662 (S.D. Ala. 2013) (relying on *Rutstein* to hold, in a proposed class pattern or practice case, "[t]he individual issues concerning damages tilt predominance even further away from the plaintiffs," requiring denial of class certification because of manageability and predominance concerns). As the Eleventh Circuit recognized, due process concerns associated with litigating untold individualized compensatory and

punitive damage claims render the *Teamsters* "pattern or practice" framework untenable.

The related concern of the Seventh Amendment's bar of reexamination also precludes the EEOC's use of the *Teamsters* "pattern or practice" framework in cases involving individualized compensatory and punitive damages. The Seventh Amendment provides in part, as it relates to suits for damages: "the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States." U.S. Const. Amend. VII. Judge Jolly and his five colleagues addressed the amendment's impact in this setting: "the amendment guarantees every litigant . . . the right to defend itself in jury trials against claims of damages [and] guarantees, however, that one jury will never reexamine the findings of another." *Bass Pro*, 865 F.3d at 222-23.

Judge Jolly reasoned that, when faced with a mass of potential claimants like that for which the EEOC now seeks relief, it would be "impossible to implement the *Teamsters* framework using separate juries for the Stage I and Stage II proceedings." *Id*. at 223. This is because of the individualized analyses the second juries would necessarily have to undertake and the interrelationship between the damage and liability issues. The second juries will "inevitably and necessarily reconsider the Stage I jury's findings in their assessment of the employer's defenses that it did not act intentionally with respect to a given employee (as to

compensatory injury and amount of damages) and/or with malice or reckless indifference (as to punitive injury and amount of damages)." *Id.* at 223.

It is important, of course, that the Supreme Court implemented the bifurcated process in *Teamsters* when compensatory and punitive damages were not available. It assumed that "a *trial court* may then . . . determine the appropriate remedy." *International Broth. of Teamsters v. U.S.*, 431 U.S. 324, 361 (1977) (emphasis added). *Teamsters* requires the bifurcated process but only if equitable remedies are at issue, *Rutstein,* 211 F.3d at 1239, unlike here where the EEOC seeks compensatory and punitive damages that implicate jury re-examination concerns. Judge Jolly's conclusion is legitimate as consideration of the damage issues would necessarily overlap with the underlying conduct and, ultimately, require reexamination.

Nor is it practical or constitutional to have the equitable issues tried to the bench and then have a single jury consider mass compensatory and punitive damages. The Eleventh Circuit upheld a district court's rejection of such a process on Seventh Amendment grounds. *See Cooper*, 390 F.3d at 722 (citing the Seventh Amendment as a basis to reject a process whereby "the district court . . . conduct[ed] an initial bench trial on the merits of the equitable claims" because "it would still be necessary for single jury to hear and rule on more than 2,000 individual claims for compensatory damages").

The Seventh Amendment precludes the use of any process outlined by *Teamsters* when compensatory and punitive damages are at issue for a large group of people, like this action where the EEOC seeks relief for individuals based on American's Freight's alleged conduct at its stores "nationwide." [*See* Doc. 1 at 1]. For this reason, the Court should dismiss the EEOC's would-be Section 706 "pattern or practice" action.

## IV.   In the Alternative, the Court Should Dismiss the Complaint Because it Does Not Contain Adequate Allegations

Assuming, for the sake of argument, that the EEOC could bring a Section 706 "pattern or practice" claim, it still must meet general pleading requirements when it seeks to do so.  It has not met that standard here, failing to identify a single individual for whom it can and is seeking relief, while also relying on misplaced statistical allegations that do not support the EEOC's ultimate allegations.

To survive a Rule 12(b)(6) motion to dismiss, the EEOC must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To meet the standard, "something beyond . . . mere possibility . . . must be alleged." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 577 (2007).

Although the EEOC has pled misconduct and said it seeks relief, it has not identified *anyone* for whom it seeks that relief.  It identified the initial charging party, Synethia Leonard, as someone allegedly aggrieved by American Freight's

conduct, but its Complaint makes clear that the EEOC does not seek monetary relief for Ms. Leonard. [Doc. 1 at 8, fn. 1]. And, because another court dismissed Ms. Leonard's claims with prejudice, *see Leonard v. American Freight*, 17-cv-665-MHH, N.D. Ala. Dec. 22, 2017 (Doc. 21),[6] she is barred from receiving any non-equitable forms of relief as a result of this action.

Thus, the Complaint purports to seek relief on behalf of a nationwide group of individuals but it does not go to the trouble of actually identifying one of those individuals. The pleadings rules exist so that defendants like American Freight can respond to allegations levied against them. It cannot do so when, as here, it has not been put on notice of the individuals who were allegedly harmed. When a government agency like the EEOC files a lawsuit after conducting a lengthy and intrusive investigation, a court should "insist upon easily provided, clearly important facts." *EEOC v. Concentra Health Svcs., Inc.¸* 496 F.3d 773, 782 (7th Cir. 2007). The Complaint does not contain the most central and simultaneously easily provided fact: who are the allegedly aggrieved individuals?

A closer look at the allegations in the Complaint reveal another pleading deficiency. The Complaint alleges that American Freight engaged in a pattern or practice of intentionally discriminating against women because it failed to hire

---

[6] As noted, *supra*, the Court can consider this without converting the motion to one for summary judgment. *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005).

women at the rate it perceives American Freight should have.[7]   In making this allegation, the EEOC failed to identify anyone (other than Ms. Leonard) who allegedly applied for a position with American Freight but was denied employment.   [*See generally* Doc. 1].   Whatever the exact bounds of pleading requirements may be, they certainly require the EEOC to allege that at least one person, for whom it can actually recover, was intentionally discriminated against by American Freight when bringing an intentional discrimination claim.

Instead of identifying any person who was allegedly harmed and for whom the EEOC can recover, the Complaint merely relies on disparate-impact type allegations. That is, the EEOC provided a lot of "statistics" from unnamed sources and then concluded from those statistics that American Freight must have intentionally discriminated against women.   *See id*.   But the statistics do not reflect intentional discrimination; they challenge the result, not the practice.

Moreover, the EEOC alleged the wrong statistics if its claims are meant to adequately plead disparate treatment. Its statistical allegations are limited to the number of male and female *hires*.   *See generally id*.   But the meaningful statistical measure depends not on the number of ultimate *hires* but on the number of *applicants* that American Freight hired.   The EEOC provided no statistics showing

---

[7] Throughout the Complaint, the EEOC refers to American Freight's hire rate compared to a "representation rate."   The EEOC did not cite anything showing what, exactly, the "representation rate" is or why it is statistically relevant, let alone the standard by which it can, in theory, base its case.

the rate at which female applicants were denied employment by American Freight, instead relying on the disparate-impact type allegation that, "[t]he difference between the *expected* hiring of women into warehouse jobs and Defendant's actual hiring of women is statistically significant."  [Doc. 1 at 6] (emphasis added).  This allegation is consistent with the rest of the Complaint; it focuses on the outcome— the "expected hiring of women"—rather than any allegation of denying any particular individual, for whom the EEOC could actually recover, a job.  These allegations do not support a plausible claim for disparate treatment. American Freight is entitled to dismissal.

## V.     The EEOC is Time-Barred from Pursuing Any Claim Based on 2013 and Early 2014 Conduct

The EEOC relies on a charge filed on January 13, 2014 as the catalyst for this suit.  [*See* Doc. 1 at ¶ 6; Exhibit A[8]]. And, based on that charge, the EEOC challenges American Freight's conduct "since at least January 1, 2013." [Doc. 1 at 1]. Yet, both Section 706 and 707 provide that a charge of discrimination must be filed within 180 days of the alleged discriminatory conduct. 42 U.S.C. § 2000e-5(e)(A); 42 U.S.C. § 2000e-6(e). Any conduct that occurred outside that 180 day period is time-barred.

---

[8] The Court may consider the charge, Exhibit A, without converting this motion to one for summary judgment because the document is "(1) central to the plaintiff's claim and (2) undisputed."  *Day*, 400 F.3d at 1275-76.

The EEOC did not inform American Freight it intended to expand its investigation to a nationwide group of allegedly aggrieved individuals until November 5, 2014. [Doc. 1 at ¶ 8]. For statute of limitations purposes—for those other than Ms. Leonard—the trigger is not *her* charge, but the date on which the EEOC informed American Freight it was expanding its investigation. As another district court held, the relevant "dates for the . . . pattern or practice charges were the dates on which the EEOC notified Defendant that it was expanding its investigation to encompass these charges." *EEOC v. Optical Cable Corp.*, 169 F. Supp. 2d 539, 547 (W.D. Va. 2001). Another district court agreed: "for claims not included in the original charge, the 'filing' date [for limitations purposes] is the date on which the EEOC notified [employer] that it was expanding its investigation . . . ." *EEOC v. Freeman*, No. RWT 09cv2573, 2011 WL 337339, at *1 (Jan. 31, 2011); *see cf. Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1225 n.19 (11th Cir. 2001) ("Regardless of its timeliness, [plaintiff's] charge did not put the EEOC and [defendant] on notice of the collective nature of the claims, so it cannot serve as the representative charge.").

Because the EEOC did not inform American Freight that it was expanding its investigation until November 5, 2014, alleged conduct that occurred before May 9, 2014 (180 days before November 5) is time-barred. Alternatively, even if Court

considers the charge date as the triggering event, any alleged conduct that occurred prior to July 17, 2013 is time-barred.

## VI.    Conclusion

By initiating this action as both a "pattern or practice" claim and a Section 706 claim, the EEOC would merge two statutes together to give it the best parts of both. It is presumably attempting to avail itself of the *Teamsters* proof model only available to the EEOC in Section 707 claims while also obtaining compensatory and punitive damages that are only available under Section 706. It hopes to "have its cake and eat it too." But courts should not permit litigants to pick and choose what they like from different statutes. The text of the statutes, as well as the impact of the 1991 amendment, and manageability and constitutional concerns all mandate that the Court dismiss this action under Rule 12(b)(6).

Further, the EEOC's complaint fails for a more basic reason. It has not pled sufficient facts to satisfy the plausibility standard. It does not identify any individual who was allegedly harmed for whom it is seeking relief and, in any event, it impermissibly relies on disparate impact allegations to try to state a disparate treatment claim. For either or both reasons, the Court should grant this motion.

Respectfully submitted,

s/ Jennifer F. Swain
Jennifer F. Swain
Patrick D. Schach

Attorneys for Defendant

**OF COUNSEL:**
**LITTLER MENDELSON, P.C.**
420 20th Street North, Suite 2300
Birmingham, Alabama 35203
(205) 421-4700 telephone
(205) 421-4699 facsimile
jswain@littler.com
pschach@littler.com

## CERTIFICATE OF SERVICE

I certify that on April 29, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

James L. Lee
Gwendolyn Young Reams
EEOC
131 M. Street E
Washington, DC 20507

Marsha L. Rucker
EEOC
1130 22nd Street South, Suite 2000
Birmingham, AL 35205

s/ Jennifer F. Swain
OF COUNSEL