FILED

2019 Jun-11  PM 02:35
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) ) | **Civil Action No. 2:19-cv-00273-MHH** |
| **AMERICAN FREIGHT MANAGEMENT COMPANY, LLC, d/b/a AMERICAN FREIGHT FURNITURE AND MATTRESS,** | ) ) ) ) ) | |
| **Defendant.** | ) | |

## EEOC'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………………...1

II.     THE EEOC MAY USE THE PATTERN OR PRACTICE
        PROOF FRAMEWORK UNDER SECTION 706………………...2

    A. Pattern or practice is a method of proof…………………………...2

    B. The EEOC may use the pattern or practice method to
       prove claims under Section 706………………………………………5

    C. The private class action authority Defendant cites is
       neither apposite nor persuasive…………………………………...13

III.    THE STATUTORY TEXT PROVIDES NO SUPPORT
        FOR DEFENDANT'S ARGUMENT……………………………..16

    A. Defendant's argument that Section 707 would be superfluous
       is incorrect…………………………………………………………16

    B. Legislative history also shows that the EEOC may use the
       pattern or practice method of proof under Section 706…………19

    C. Redundancy in the protections of the civil rights laws
       is intentional……………………………………………………...20

IV.     MANAGEABILITY IS NOT A BASIS FOR DISMISSAL AND
        THE COURT WILL IN ANY EVENT BE ABLE TO MANAGE
        THIS ACTION USING EXISTING AUTHORITIES…………...21

V.      CONCLUSION……………………………………………………..25

        CERTIFICATE OF SERVICE……………………………………27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Gardner-Denver Co.*,
   415 U.S. 36 (1974)..................................................................................21

*Anderson v. Conboy*,
   156 F.3d 167 (2d Cir. 1998)..................................................................21

*Bonner v. City of Pritchard*,
   661 F.2d 1206 (11th Cir. 1981) .............................................................17

*Brown v. Ala. Dep't of Transp.*,
   597 F.3d 1160 (11th Cir. 2010) .............................................................24

*Celestine v. Petroleos de Venezuela SA*,
   266 F.3d 343 (5th Cir. 2001) (abrogated on other grounds by *National R.R.*
   *Passenger Corp. v. Morgan*, 536 U.S. 101 (2002))...................................2

*Chin v. Port Authority of NY & NJ*,
   685 F.3d 135 (2d Cir. 2012)....................................................................2

*Davis v. Coca-Cola Bottling*,
   516 F.3d 955 (11th Cir. 2008) ....................................................13, 14, 24

*EEOC & David v. Signal Int'l*,
   2013 WL 8600729 (E.D. La. Dec. 4, 2013).............................................9

*EEOC v. Am. Nat'l Bank*,
   652 F.2d 1176 (4th Cir. 1981) .................................................................9

*EEOC v. Bass Pro Outdoor World, Inc.*,
   826 F.3d 791 (5th Cir. 2016) ..............................................................8, 13

*EEOC v. Bass Pro Outdoor World, L.L.C.*,
   865 F.3d 216 (5th Cir. 2017) ........................................................ *passim*

*EEOC v. Bass Pro Outdoor World, LLC*,
   35 F. Supp. 3d 836 (S.D. Tex. 2014) ............................................. *passim*

*EEOC v. CRST Van Expedited, Inc.*,
   611 F Supp. 2d 918 (N.D. Iowa 2009)...................................................12

*EEOC v. Darden Restaurants*,
   2015 WL 13559889 (S.D. Fla. Nov. 9, 2015)........................................23

*EEOC v. Dial Corp.*,
　259 F. Supp. 2d 710 (N.D. Ill. 2003) ...................................................................23

*EEOC v. Doherty Enterprises*,
　126 F. Supp. 3d 1305 (S.D. Fla. 2015) ...............................................................18

*EEOC v. Fed. Reserve Bank of St. Louis*,
　84 F.R.D. 337 (W.D. Tenn. 1979) ......................................................................10

*EEOC v. Gen. Tel. Co. of the Northwest*,
　885 F.2d 575 (9th Cir. 1989) ............................................................................5, 7

*EEOC v. Gen. Tel. Co. of the Nw., Inc.*,
　No. C77-247M, 1977 U.S. Dist. LEXIS 12991, 1977 WL 15420 (W.D. Wash.
　Dec. 21, 1977) .....................................................................................................21

*EEOC v. Horizontal Well Drillers, LLC*,
　2018 U.S. Dist. LEXIS 102434 (W.D. Okla. June 28, 2018) .................................9

*EEOC v. Int'l Profit Assocs.*,
　2010 WL 1416153 (N.D. Ill. Mar. 31, 2010)........................................................9

*EEOC v. JBS USA*,
　2011 WL 3471080 (D. Colo. Aug. 8, 2011) ...................................................11, 12

*EEOC v. JBS USA*,
　2012 WL 5906537 (D. Neb. Nov. 26, 2012) ........................................................12

*EEOC v. Lawler Foods, Inc.*,
　128 F. Supp. 3d 972 (S.D. Tex. 2015) ...................................................................9

*EEOC v. Mavis Disc. Tire, Inc.*,
　129 F. Supp. 3d 90 (S.D.N.Y. 2015).................................................................9, 19

*EEOC v. Monarch Machine*,
　737 F.2d 1444 (6th Cir. 1980) ...............................................................................7

*EEOC v. Outback Steak House*,
　576 F. Supp. 2d 1202 (D. Colo. 2008)..................................................................23

*EEOC v. Performance Food Group*,
　16 F. Supp. 3d 576 (D. Md. 2014) .........................................................................9

*EEOC v. Pitre*,
　908 F. Supp. 2d 1165 (D.N.M. 2012) ...............................................................9, 23

*EEOC v. Scolari Warehouse Mkts., Inc.*,
　488 F. Supp. 2d 1117 (D. Nev. 2007)...................................................................10

4

*EEOC v. United Parcel Serv.*,
860 F.2d 372 (10th Cir. 1988) ........................................................................9

*EEOC v. UPS Ground Freight, Inc.*,
344 F. Supp. 3d 1256 (D. Kan. 2018) .............................................................9

*EEOC v. W. Distrib. Co.*,
2018 U.S. Dist. LEXIS 128319 (D. Colo. July 27, 2018) ...............................9

*EEOC v. W. Distrib. Co.*,
322 F. Supp. 3d 1100 (D. Colo. 2018)...........................................................11

*EEOC v. Waffle House*,
534 U.S. 279 (2002)...........................................................................6, 10, 11, 24

*Exxon Shipping Co. v. Baker*,
554 U.S. 471 (2008).......................................................................................24

*Franks v. Bowman Transp. Co.*,
424 U.S. 747 (1976).................................................................................2, 3, 4

*General Telephone of the Northwest, Inc. v. EEOC*,
446 U.S. 324 (1977) ............................................................................... *passim*

*Int'l Bh'd of Teamsters v. United States*,
431 U.S. 324 (1977).............................................................................. *passim*

*Jefferson v. Ingersoll Int'l*,
195 F.3d 894 (7th Cir. 1999) ..........................................................................9

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973).................................................................................4, 7, 11

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 260 (5th Cir. 1999) ........................................................................25

*Occidental Life Ins. Co. of Cal. v. EEOC*,
432 U.S. 355 (1977).................................................................................5, 10

*Rutstein v. Avis Rent-A-Car Sys.*,
211 F.3d 1228 (11th Cir. 2000) .....................................................................15

*Serrano & EEOC v. Cintas*,
699 F.3d 884 (6th Cir. 2012) ................................................................ *passim*

*Skilling v. United States*,
561 U.S. 358 (2010)........................................................................................21

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002) .................................................................................................4

*U.S. v. Allegheny-Ludlum Industries, Inc.*,
  517 F.2d 826 (5th Cir. 1975) ...................................................................................17

*U.S. v. Board of Educ. for School Dist. of Philadelphia*,
  911 F.2d 882 (3d Cir. 1990) ....................................................................................19

*United States EEOC v. W&O Inc.*,
  213 F.3d 600 (11th Cir. 2000) .................................................................................14

**Statutes**

42 U.S.C. § 2000e-2 .....................................................................................................18

42 U.S.C. § 2000e-3 .....................................................................................................18

42 U.S.C. § 2000e-5 .............................................................................................5, 17, 18

42 U.S.C. § 2000e-6 ........................................................................................2, 3, 17, 18

ADA ...............................................................................................................................11, 24

ADEA .............................................................................................................................23

**Other Authorities**

118 Cong. Rec. 4081 (1972) .........................................................................................20

118 Cong. Rec. 4941 (1972) .........................................................................................20

Seventh Amendment .....................................................................................................22, 25

EEOC. *General Telephone* .........................................................................................13

Fed.R.Civ.P 12(b)(6) .....................................................................................................1

Fed.R.Civ.P. 23 ....................................................................................................... *passim*

Rules 16 and 26 .............................................................................................................8

S. Rep. No. 92-415 (1971) ...........................................................................................19, 20

Senate Report on the Amendments ...............................................................................19

## I.  INTRODUCTION

Defendant's motion to dismiss should be denied because the plain language of the statute, its legislative history, and the weight of well-reasoned authority all establish that the pattern or practice method of proof is available in actions brought by the EEOC under Section 706 of Title VII. Because "pattern or practice" refers to a proof framework and not a cause of action, it is not an appropriate subject for a Rule 12(b)(6) motion.

Even if it were, Defendant's argument is untenable. Defendant concedes that the pattern or practice framework is available under Section 706 when private plaintiffs file suit. Indeed, the Supreme Court first articulated the pattern or practice framework in a case brought by private plaintiffs under Section 706. Defendant argues, however, when the EEOC is the plaintiff, the the words of Section 706 somehow mean something different. Not so. The statute and decades of caselaw are clear: The EEOC is entitled to proceed under a pattern or practice proof framework under Section 706 to enforce Title VII and to seek the relief specified by Congress for the women aggrieved by Defendant's hiring practices.

Defendant's manageability arguments are not appropriate on a motion to dismiss, as they rely on assumptions about the size of the case and speculation about case management strategies—matters that are not within the scope of the pleadings. In any event, the Federal Rules of Civil Procedure provide ample tools

for the parties and the Court to formulate a trial plan that is just, efficient, manageable, and that is appropriate in light of the scope of the alleged violations.

The EEOC respectfully requests that Defendant's motion be denied.

## II.   THE EEOC MAY USE THE PATTERN OR PRACTICE PROOF FRAMEWORK UNDER SECTION 706.

### A. Pattern or practice is a method of proof.

"Pattern or practice" refers to a method of proof, or proof framework, that is based primarily on the Supreme Court's decisions in *Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976), and *Int'l Bh'd of Teamsters v. United States*, 431 U.S. 324 (1977). Indeed, courts of appeals have consistently recognized that pattern or practice "is not a separate and free-standing cause of action..., but is really merely another method by which disparate treatment can be shown." *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 355 (5th Cir. 2001) (abrogated on other grounds by *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)); *see also, e.g., Chin v. Port Authority of NY & NJ*, 685 F.3d 135, 147-48 (2d Cir. 2012); *Serrano & EEOC v. Cintas*, 699 F.3d 884, 891-96 (6th Cir. 2012).[1] Under Section 707, given that provision's explicit reference to "pattern or practice" conduct, 42 U.S.C. § 2000e-6(a), this framework may be the only permissible

---

[1] To be sure, "[a]lthough the *Teamsters* framework is not a freestanding cause of action, courts—including the Supreme Court—sometimes loosely refer to the *Teamsters* method of proof as a 'pattern-or-practice claim.'" *Chin*, 685 F.3d at 149 n.8. Defendant's brief also makes use of this "loose" shorthand but attributes to it a substantive significance that is not supported by the law.

method of proof. Section 706, however, is not so limited.

*Teamsters* was originally brought by the Attorney General under Section 707, at the time the only statutory provision authorizing direct government enforcement actions against an employer.[2]  In analyzing how to allocate the burdens of proof and what inferences could be drawn from such proof, the Court in *Teamsters* relied upon its prior decision in *Franks*, a private class action that was necessarily brought under Section 706. As *Teamsters* put it, once the *Franks* plaintiff class proved a policy of employment discrimination, "there were reasonable grounds to infer that individual hiring decisions were made in pursuit of the discriminatory policy and to require the employer to come forth with evidence dispelling that inference." *Teamsters*, 431 U.S. at 359.

The Supreme Court did not base its holdings in *Franks*, and subsequently in *Teamsters*, on the wording of the two statutory provisions authorizing suit, Sections 706 and 707 respectively, but instead on general principles about how to prove a claim. As *Teamsters* explained, the idea that establishing a discriminatory pattern or practice "creates a rebuttable presumption in favor of individual relief" is "consistent with the manner in which presumptions are created generally." *Teamsters*, 431 U.S. at 359 n.45; *see also id.* ("Presumptions shifting the burden of proof are often created to reflect judicial evaluations of probabilities and to

---

[2] Although § 707 continues to refer to the Attorney General, Congress amended the statute to transfer the functions of the Attorney General under § 707 to the EEOC. 42 U.S.C. § 2000e-6(c).

conform with a party's superior access to the proof."). Moreover, the *Teamsters* Court emphasized that both *Franks* and the *Teamsters* decisions themselves were simply applying the fundamental principle set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "The importance of *McDonnell Douglas* lies, not in its specification of the discrete elements of proof there required," the Court stated, "but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Teamsters*, 431 U.S. at 358. In other words, *Teamsters* and *Franks* took the central lesson of *McDonnell Douglas* and applied it to the systemic discrimination context to create appropriate burdens of proof.

In sum, "pattern or practice" refers to a method of proof, not a cause of action. As a method of proof is not subject to a motion to dismiss, the motion should be denied.[3]

---

[3] Indeed, although the EEOC's complaint here references a pattern or practice of discrimination, (Doc. 1, p. 4, ¶ 14(b)), specifying a method of proof is not even required at the pleading stage. *See, e.g., Cintas*, 699 F.3d at 897 ("[A] plaintiff is not required to plead whether she intends to employ the *McDonnell Douglas* or the *Teamsters* burden-shifting evidentiary framework."); *cf. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas* ... is an evidentiary standard, not a pleading requirement."). Accordingly, even if the Court were to conclude that the EEOC may not utilize the pattern or practice framework to prove its § 706 claims, that determination would not dispose of the claims themselves. It would simply leave the EEOC in the position of having to prove those claims using another, likely less efficient method of proof, namely proving sex discrimination on a case-by-case basis through direct or circumstantial evidence.

**B. The EEOC may use the pattern or practice method to prove claims under Section 706.**

Preliminarily, Defendant itself has conceded, as it must, that the pattern or practice proof framework is available under Section 706 for "private-plaintiff class actions." (Doc. 9, p. 10). This concession alone is fatal to Defendant's argument that the statutory text of Section 706 somehow prohibits the proof framework from being utilized under that section.[4] The language of Section 706 draws no distinction between the EEOC and private plaintiffs with respect to modes or burdens of proof or otherwise reflects any Congressional intent to limit the methods of proof the EEOC may use. *Cf. Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 366 (1977).[5] Thus, while couched as an argument based on statutory text, Defendant's argument is anything but.

The Supreme Court endorsed the EEOC's use of the pattern or practice framework in a Section 706 suit decades ago, and every court of appeals to address this issue since then has agreed that the agency may do so. The overwhelming majority of district court authority is likewise in accord.

In *General Telephone of the Northwest, Inc. v. EEOC*, the EEOC brought an

---

[4] It also contradicts Defendant's curious suggestion that the singular rather than plural phrasing of "an unlawful employment practice" in § 706 removes repeated violations from the scope of § 706. Defendant cites no support for the proposition that violating a statute repeatedly rather than just once somehow relieves a defendant of liability.

[5] Where Congress wished to draw a distinction between private plaintiffs and the government in § 706, it knew how to do so. *See, e.g.*, 42 U.S.C. § 2000e-5(k) ("reasonable attorney's fee" allowed for "the prevailing party, other than the Commission or the United States").

5

action seeking relief for a class of individuals under Section 706, and sought to use the pattern or practice framework when it moved the district court "for an order bifurcating the issue of class liability from the issue of individual damages." *See* 446 U.S. 318, 322 (1980) (internal quotation marks omitted). The defendant argued that the case could not proceed as a "class action," with bifurcated proceedings, because the EEOC had not complied with Rule 23.

The Supreme Court held that the EEOC need not seek Rule 23 certification: "the EEOC need look no further than §706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals." *Id.* at 324; *see also EEOC v. Waffle House*, 534 U.S. 279, 288 (2002) (quoting *General Telephone* for this point). The Supreme Court recognized that the agency was exercising that authority by seeking to bifurcate the case into a "class liability" phase and a subsequent "individual damages" phase. *Id.* at 322; *id.* at 333 ("Here ... the EEOC moved to try initially the issue of liability, not to avoid proving individual claims, but merely to postpone such proof.").

The Court also quoted from the legislative history of Section 706: "if [the EEOC] proceeds by suit [under §706], then it can proceed by class suit. If it proceeds by class suit, it is in the position of doing exactly what the Department of Justice does in pattern and practice suits." *Id.* at 327 (internal quotation marks omitted, first alteration in original). After remand, the EEOC indeed went on to try

the case using the *Teamsters* model of proof after remand. *See EEOC v. Gen. Tel. Co. of the Northwest*, 885 F.2d 575, 577, 584 (9th Cir. 1989) (reversing district court's finding that "the EEOC had failed to prove that GenTel engaged in a company-wide pattern or practice of intentional discrimination"). "It strains credulity to suggest that, in the course of granting the EEOC permission to sidestep Rule 23 in suits brought on behalf of a class and pursuant to § 706, the Court intended to require that the Commission prove each class member's claim in the manner set forth in *McDonnell Douglas*." *EEOC v. Bass Pro Outdoor World, LLC*, 35 F. Supp. 3d 836, 848 (S.D. Tex. 2014).

Any doubt on this point should be put to rest by the fact that every court of appeals that has addressed the issue since *General Telephone* has held that the EEOC may use the pattern or practice framework under Section 706. In *Cintas*, the Sixth Circuit concluded:

> The *Teamsters* opinion, while ostensibly specific to suits that the EEOC brings pursuant to §707, in no way indicated an intent to tie the pattern-or-practice framework exclusively to the EEOC's enforcement authority under §707. To the contrary, the Court's reliance on *Franks*, a class-action case invoking §706, suggests that the holding of *Teamsters* is not to be so narrowly circumscribed. Subsequent Supreme Court decisions [*General Telephone*] affirming the viability of EEOC class claims under §706 and Congress's "general intent to accord parallel or overlapping remedies against discrimination" further support this reading of *Teamsters*.

*Cintas*, 699 F.3d at 895. *Accord EEOC v. Monarch Machine*, 737 F.2d 1444, 1449-

50 (6th Cir. 1980) (remanding EEOC § 706 claim for trial using *Teamsters* framework).

The *Cintas* court noted that while only Section 707 expressly refers to "pattern or practice," Supreme Court precedent supports the view that "the inclusion of the language in §707 simply means that the scope of the EEOC's authority to bring suit is more limited when it acts pursuant to §707," and does not mean the pattern or practice framework is prohibited under Section 706. *Cintas*, 699 F.3d at 894. Based on the explanation in *Teamsters* that "a plaintiff has flexibility in how she meets that initial burden [of proving a pattern or practice of discrimination], ... variance based on the facts of the case is expected." *Id*.

The Fifth Circuit has also held that the EEOC could use the pattern or practice framework under both Sections 706 and 707. *EEOC v. Bass Pro Outdoor World, Inc.,* 826 F.3d 791 (5th Cir. 2016). The Fifth Circuit concluded that when Congress amended Title VII in 1991 it did not prohibit the EEOC from proceeding under the *Teamsters* framework in cases brought under Section 706. *Id.* at 800. "Bifurcation of liability and damages is a common tool deployed by federal district courts in a wide range of civil cases—well within its powers under Rules 16 and 26. We decline to imply limits upon the trial court's management power that not only cannot be located in the language of the statute but also confound the plain language of the Federal Rules." *Id.*

8

Other circuits, while addressing the issue in less depth, are in accord. In *Jefferson v. Ingersoll Int'l*, 195 F.3d 894, 899 (7th Cir. 1999), the Seventh Circuit stated that "*General Telephone*...holds that, as the plaintiff in a pattern-or-practice suit under § 706(f)(1) …, the EEOC may seek classwide relief." In *EEOC v. United Parcel Serv.*, 860 F.2d 372 (10th Cir. 1988), the Tenth Circuit held that the EEOC could use the pattern or practice framework under Section 706 after the agency intervened in a private plaintiff's Section 706 case. In *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1184, 1187-88 (4th Cir. 1981), the Fourth Circuit noted the EEOC's "broad enforcement powers" under Section 706, and held that the EEOC proved a "pattern or practice of discrimination" under *Teamsters*.

The overwhelming majority of district courts have also concluded the EEOC may proceed under Section 706 using the *Teamsters* framework. *See, e.g.*, *EEOC v. UPS Ground Freight, Inc*., 344 F. Supp. 3d 1256, 1266 (D. Kan. 2018); *EEOC v. Mavis Disc. Tire, Inc*., 129 F. Supp. 3d 90, 107 (S.D.N.Y. 2015); *EEOC v. W. Distrib. Co.*, 2018 U.S. Dist. LEXIS 128319 (D. Colo. July 27, 2018); *EEOC v. Horizontal Well Drillers, LLC*, 2018 U.S. Dist. LEXIS 102434 (W.D. Okla. June 28, 2018); *EEOC v. Lawler Foods, Inc*., 128 F. Supp. 3d 972, 973 (S.D. Tex. 2015); *EEOC v. Performance Food Group*, 16 F. Supp. 3d 576 (D. Md. 2014) (Doc. 37); *EEOC & David v. Signal Int'l*, 2013 WL 8600729 (E.D. La. Dec. 4, 2013); *EEOC v. Pitre*, 908 F. Supp. 2d 1165, 1174-75 (D.N.M. 2012); *EEOC v.*

9

*Int'l Profit Assocs.*, 2010 WL 1416153 (N.D. Ill. Mar. 31, 2010); *EEOC v. Scolari Warehouse Mkts., Inc.*, 488 F. Supp. 2d 1117, 1145 (D. Nev. 2007); *EEOC v. Fed. Reserve Bank of St. Louis*, 84 F.R.D. 337 (W.D. Tenn. 1979).

In the absence of appellate decisions supporting its argument, Defendant relies principally on a dissent from the denial of rehearing en banc in *Bass Pro*. That dissenting opinion is of no precedential value and is persuasively rebutted both by the decades-long line of cases discussed above, as well as by a concurrence. The *Bass Pro* concurrence noted that the same argument Defendant advances here is of a piece with various efforts to constrain the EEOC's enforcement authority over the years. The Supreme Court has repeatedly rejected those efforts. *EEOC v. Bass Pro Outdoor World, L.L.C.*, 865 F.3d 216, 226 (5th Cir. 2017) (concurring in denial of rehearing en banc). Among the examples of unsuccessful attempts to tie the hands of the EEOC is *Occidental Life*, where a defendant unsuccessfully argued that the EEOC should be constrained by state statutes of limitations. 432 U.S. 355. Another example is *Waffle House*, where a defendant unsuccessfully argued that an arbitration agreement precluded the EEOC from pursuing victim specific relief for the individual who had signed it. 534 U.S. 279. "[T]he EEOC is not merely a proxy for the victims of discrimination[,] and ... the EEOC's enforcement suits should not be considered representative actions.… When the EEOC acts, albeit at the behest of and for the benefit of specific

individuals, it acts also to vindicate the public interest in preventing employment discrimination." *Id.* at 326.

The isolated, out-of-circuit of district court decisions Defendant cites to support its argument are likewise not persuasive. The first case that Defendant cites, *EEOC v. JBS USA*, 2011 WL 3471080 (D. Colo. Aug. 8, 2011) ("*JBS Colorado*") (Doc. 9, p. 14), has been criticized or distinguished in multiple cases. As the *Bass Pro* district court explained: "This Court believes that the *JBS Colorado* court was incorrect, for all the reasons set forth above, in drawing this final conclusion [that the EEOC was not allowed to proceed under the *Teamsters'* framework for claims under Section 706]. Indeed, its primary support for the proposition that 'the *McDonnell Douglas* framework applies to individual claims brought under § 706' was the *Serrano* district court opinion, which was later reversed." *Bass Pro*, 35 F. Supp. 3d at 859 (citations omitted).

Another court also declined to follow *JBS Colorado* in a case where, as is true in the EEOC's complaint here, the action was brought only under Section 706 and not Section 707: "This case was initiated pursuant to § 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference § 706. Indeed, there is no reference to § 707 in Plaintiff's Complaint. Therefore, I deny Defendant's request that I rely upon *EEOC v. JBS USA, LLC* because the current case does not contain any interplay between §§ 706 and 707." *EEOC v. W. Distrib. Co.*, 322 F. Supp. 3d

11

1100, 1105 (D. Colo. 2018) (citations omitted).

The other *JBS* case Defendant cites, *EEOC v. JBS USA*, 2012 WL 5906537 (D. Neb. Nov. 26, 2012) ("*JBS Nebraska*") (Doc. 9, p. 14), simply does not advance Defendant's argument. As the *Bass Pro* district court noted:

> The district judge noted that *JBS Colorado* had relied on the later-vacated *Serrano* decision and thus appears to have taken no position on whether "the EEOC may pursue claims under the *Teamsters* pattern-or-practice framework pursuant to its Section 706 authority." [2012 WL 5906537,] at *3. The question before the *JBS Nebraska* court was whether private interveners, not proceeding as a Rule 23 class, could employ the *Teamsters* framework. *Id.* Based on binding Eighth Circuit precedent, the *JBS Nebraska* court said that they could not. *Id.* This court has no reason to cast doubt upon that conclusion, but it also has no reason to treat it as persuasive.

*Bass Pro*, 35 F. Supp. 3d at 859.

The third case Defendant cites, *EEOC v. CRST Van Expedited, Inc.*, 611 F Supp. 2d 918 (N.D. Iowa 2009), was decided before the highly persuasive *Cintas* and *Bass Pro* decisions. *CRST* is distinguishable on the ground that it involved hostile work environment claims that are less susceptible to pattern or practice proof. *See, e.g.*, *Bass Pro*, 35 F. Supp. 3d at 858 n.15. In sum, the authority provided by Defendant does little to counter the well-reasoned conclusion of *Bass Pro*, *Cintas*, and many other cases that the EEOC may use the pattern or practice framework to prove § 706 claims.

### C. The private class action authority Defendant cites is neither apposite nor persuasive.

Finding little support for its position in decisions involving actions brought by the EEOC under Section 706, Defendant turns to private Rule 23 class action cases to bolster its argument. (Doc. 9, pp. 19-21). None of the cases discussed in these pages of Defendant's brief involve EEOC actions, and all were governed by Fed. R. Civ. P. 23. First and foremost, they are inapposite here because the Supreme Court has expressly held that Rule 23 is not applicable to an enforcement action brought by the EEOC. *General Telephone*, 446 U.S. at 323; *see also Bass Pro*, 826 F.3d at 801-02 (panel decision). Accordingly, reliance on Rule 23 and caselaw based on the requirements it imposes on private class actions is misplaced and conflicts with *General Telephone*.

Defendant also points to the fact that in some of these cases, when providing general background statements about the law, the Eleventh Circuit has noted that the government may bring a pattern or practice case under Section 707 but has not also stated that the government may do so under Section 706. *See, e.g., Davis v. Coca-Cola Bottling*, 516 F.3d 955, 964-65 (11th Cir. 2008) (also noting that private plaintiffs may bring pattern or practice cases under Rule 23). Defendant contends that its position is supported by the fact that "[t]he Eleventh Circuit mentioned *only* Section 707 and private Rule 23(b)(2) class actions" and said

"*nothing* about how they could also be brought by the EEOC under Section 706." (Doc. 9, pp. 13-14) (emphases in original). Defendant has one thing right:  the cases it cites say "nothing" about whether the EEOC may use the pattern or practice framework under Section 706. Even if it were reasonable to conclude that a court *not* speaking to the point one way or the other somehow supported Defendant's argument here, at best this would be dicta, as *Davis* and the other cases cited by Defendant did not involve any claims by the EEOC.

In reality, Congress has entrusted the EEOC with prosecutorial powers that are broader—not narrower—than those conferred on private parties, in order to help the EEOC fulfill its mission of eradicating employment discrimination: "Unlike the Rule 23 class representative, the EEOC is authorized to proceed in a unified action and to obtain the most satisfactory overall relief even though competing interests are involved and particular groups may appear to be disadvantaged. The individual victim is given his right to intervene for this very reason." *General Telephone*, 446 U.S. at 331. The Eleventh Circuit has stated that it makes little sense to authorize the EEOC to bring suit on behalf of multiple employees against their employer if doing so would reduce the damages that can be obtained. *United States EEOC v. W&O Inc*., 213 F.3d 600, 613-14 (11th Cir. 2000). One of the most important tools the EEOC has, given its expansive mission and limited resources, is its ability to prosecute cases on behalf of classes of

aggrieved individuals using the *Teamsters* framework.

Even under the Rule 23 precedent Defendant cites, private plaintiffs are not as severely constrained as Defendant suggests. *Avis* (Doc. 9, p. 20), which denied class certification in a Section 1981 case, was not brought under Title VII and was not even an employment discrimination case, a point the Eleventh Circuit emphasized. *Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1240-41 (11th Cir. 2000). The *Avis* court itself stated that "[i]t is clear that *Teamsters* applies in private class actions alleging systemic disparate treatment in employment." *Id.* at 1237. Courts applying *Avis* have accordingly recognized that, in the employment discrimination context, the *Teamsters* approach remains the correct one for appropriate class cases. For example, in *Ingram v. Coca-Cola Co*, a case involving racially discriminatory promotion and compensation practices affecting a class of African American employees, an Eleventh Circuit district court approved a settlement of $58.7 million in compensatory damages and $24.1 million in backpay (see footnote 11 to the decision). 200 F.R.D. 685, 700-01 (N.D. Ga. 2001). The *Ingram* court noted that under *Avis*, the bifurcated *Teamsters* framework remained not only an available, but the preferred, method of proof. *Id.* The bifurcated approach allows for a means of determining liability that is more just, less expensive, and speedier than what would likely be undertaken if the parties had to litigate each claim separately. The bifurcated approach also allows the court to give

15

individualized consideration to damages claims. The EEOC should be allowed to use the well-established *Teamsters* framework to prove its case.

## III.   THE STATUTORY TEXT PROVIDES NO SUPPORT FOR DEFENDANT'S ARGUMENT.

Lacking judicial authority for its position, Defendant makes seemingly textual arguments (Doc. 9, p. 8 *et seq.*), relying heavily on the opinion dissenting from the denial of en banc rehearing in *Bass Pro*. The arguments are unavailing.

### A. Defendant's argument that Section 707 would be superfluous is incorrect.

Mirroring an argument made by the *Bass Pro* dissent, Defendant contends that permitting the use of the pattern or practice framework in § 706 suits would render § 707 superfluous. (Doc. 9, p. 17 *et seq.*). This seemingly textual argument actually overlooks numerous provisions of the text of Section 707.

Section 707 is different from Section 706 in a number of important respects. The *Bass Pro* concurrence noted two (but not all) of these differences: "First, private individuals have the right to intervene in § 706 actions, but not § 707 actions. Second, § 707 grants the EEOC the right to trial by three-judge panel, but § 706 does not. Even if these differences were 'inconsequential procedural technicalities,' any small additional work that separate statutes do is sufficient to satisfy this interpretive canon." *Bass Pro*, 865 F.3d at 231. Relatedly, but not noted by the *Bass Pro* opinions, Section 707 also authorizes a direct appeal to the

16

Supreme Court from any judgment by a three-judge court convened under that provision. 42 U.S.C. § 2000e-6(b). Section 706 does not.

However, these are not the only differences: A third is that Section 707 permits the government to bring suit without fulfilling the various conditions precedent required for a claim under Section 706:

> Section 707 does not make it mandatory that anyone file a charge against the employer or follow administrative timetables before the suit may be brought. It was unquestionably the design of Congress in the enactment of § 707 to provide the government with a swift and effective weapon to vindicate the broad public interest in eliminating unlawful practices, at a level which may or may not address the grievances of particular individuals.

*U.S. v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826, 843 (5th Cir. 1975);[6] *see also Cintas*, 699 F.3d at 896.[7]

A fourth difference pertains to limitations periods. Section 706 generally authorizes relief for discrimination occurring within 180 or 300  days of the charge. 42 U.S.C. § 2000e-5. Section  707 contains no limitation on the temporal scope of a claim. *See Allegheny-Ludlum*, 517 F.2d at 843 (Section 707(a) does not require following "administrative timetables" before suit).

---

[6] *Allegheny* is controlling on this point, since decisions of the former Fifth Circuit issued prior to October 1, 1981 are binding precedent within the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[7] Separately, Section 707 also specifies how the EEOC is to proceed if an administrative *charge* alleging a pattern or practice of discrimination is lodged with the agency. *See* 42 U.S.C. § 2000e-6(e). Section 707(e) calls for the agency to proceed with investigation and conciliation of such a charge in the manner described in Section 706. *Id.* This charge processing direction should not be confused with the agency's authority to file *suit* in the absence of such a charge, under Section 707(a), as described in *Allegheny-Ludlum*.

17

A fifth difference concerns who may be sued under each provision. Whereas Section 706 actions may proceed only against employers, employment agencies, and labor organizations who have committed "unlawful employment practices," 42 U.S.C. §§ 2000e-2, 2000e-3, 2000e-5, Section 707 authorizes suit against "any person or group of persons," 42 U.S.C. § 2000e-6(a).

A sixth difference is what conduct may be addressed under each provision. While Section 706 permits claims for a specific set of "unlawful employment actions," as defined in Sections 703-704 (42 U.S.C. §§ 2000e-2, 2000e-3), Section 707 more expansively covers any conduct that constitutes "resistance" to the enjoyment of any Title VII right. 42 U.S.C. § 2000e-6(a).

One example of the use of the broader authority found under Section 707 can be found in *U.S. v. Original Knights of the Ku Klux Klan*, where a court relying on Section 707(a) enjoined private individuals (who were not employers, employment agencies, or labor organizations) from engaging in a pattern of threats and violence intended to (among other things) deter African Americans from seeking employment and to deter employers from hiring them (that is, actions of "resistance" to Title VII rights that were not unlawful employment actions under §§ 703-704). *See* 250 F. Supp. 330, 356 (N.D. Miss. 1966); *see also EEOC v. Doherty Enterprises*, 126 F. Supp. 3d 1305, 1311 (S.D. Fla. 2015) (citing *Original Knights* for this point and agreeing that "a resistance claim

[under § 707] is not limited to cases involving an unlawful employment practice"). The Third Circuit has likewise explained that Section 707(a) permits "prophylactic relief" from a policy that "endangered" Title VII rights, even if the defendant was "not … the employer of the employees whose Title VII rights are endangered." *U.S. v. Board of Educ. for School Dist. of Philadelphia*, 911 F.2d 882, 891-93 (3d Cir. 1990).

The chart attached in Appendix A lays out these differences between Sections 706 and 707. *See also, e.g.*, *Mavis Discount Tire*, 129 F. Supp. 3d at 108 (summarizing differences between statutes and concluding that overlap with § 706 does not make § 707 superfluous).

### B. Legislative history also shows that the EEOC may use the pattern or practice method of proof under Section 706.

The broad language of Section 706 implements Congress' intent, in enacting the 1972 Amendments to Title VII, to provide the EEOC "with effective power to enforce Title VII." S. Rep. No. 92-415, at 28 (1971). Prior to the Amendments, the EEOC was limited to investigating and conciliating charges of discrimination, filing *amicus* briefs, and suing to enforce court orders in private suits. The initial Senate Report on the Amendments noted that the "failure to grant the EEOC meaningful enforcement powers has proven to be a major flaw in the operation of Title VII." *Id.* at 4. The bill enacted by Congress authorized the EEOC to bring

19

suit under Section 706, enabling the EEOC to achieve "the overriding public interest in equal employment opportunity ... through direct Federal enforcement." 118 Cong. Rec. 4941 (1972).

Nothing in this history evinces a Congressional intent to limit the Commission's authority under Section 706. To the contrary, the statements of the bill's floor managers, Senators Javits and Williams, support the view that the Commission may bring a pattern or practice suit under Section 706. Senator Javits stated that the EEOC's authority to initiate litigation under §706(f)(1) would allow it to bring "exactly the same actions that the Department of Justice does under pattern and practice." 118 Cong. Rec. 4081 (1972); *see also id.* at 4082 (Senator Javits) ("[I]f [the EEOC] proceeds by suit [under §706(f)(1)], then it can proceed by class suit. If it proceeds by class suit, it is in the position of doing exactly what the Department of Justice does in pattern and practice suits.").

### C. Redundancy in the protections of the civil rights laws is intentional.

Defendant's argument also overlooks the fact that remedial redundancy in the civil rights laws such as Title VII is by design. It is part of Congress' plan "to ensure that the EEOC could prevent unlawful employment practices, Congress opted to give the EEOC broad and overlapping authority." *Bass Pro*, 865 F.3d at 231 (concurrence). In the area of employment discrimination, legislation has "long evinced a general intent to accord parallel or overlapping remedies against

20

discrimination." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974). For example, with respect to race discrimination, Title VII and Section 1981 coexist despite their partially overlapping coverage. *Anderson v. Conboy*, 156 F.3d 167, 180 (2d Cir. 1998). The legislative history indicates that Congress was aware it was creating a redundancy when it enacted its 1972 amendments. *EEOC v. Gen. Tel. Co. of the Nw., Inc.*, No. C77-247M, 1977 U.S. Dist. LEXIS 12991, 1977 WL 15420, at *3 (W.D. Wash. Dec. 21, 1977) (citing 118 Cong. Record, p. 4081, February 16, 1972). Overlap with other antidiscrimination provisions does not render a statute superfluous. *Skilling v. United States*, 561 U.S. 358, 413 n.45 (2010). To the extent that the EEOC's use of the pattern or practice framework in a Section 706 suit creates some redundancy with Section 707, this redundancy is not a reason to find that the EEOC lacks such authority under Section 706.

## IV.   MANAGEABILITY IS NOT A BASIS FOR DISMISSAL AND THE COURT WILL IN ANY EVENT BE ABLE TO MANAGE THIS ACTION USING EXISTING AUTHORITIES.

Defendant's argument that the pursuit of individual damages for victims of discrimination renders the pattern or practice framework so unmanageable as to offend the Constitution is meritless. Preliminarily, this is not an appropriate argument on a motion to dismiss, as it depends on assumptions about the size of the case that are not found in the pleadings, as well as on development of a case

management plan by the parties and the Court.[8]

To the extent Defendant suggests that no case management plan could possibly render the *Teamsters* framework manageable, that is belied by decades of experience to the contrary. The *Bass Pro* concurrence provides a partial list of cases in which the EEOC has sought compensatory and punitive damages while using the pattern or practice framework to prove its claims. *See* 865 F.3d at 233 n.59. Tellingly, the only support Defendant offers to attempt to substantiate its unmanageability concerns is the *Bass Pro* dissent.

While it is premature to attempt to articulate a case management plan or a specific proposal for bifurcation, it should be noted that there is nothing about the *Teamsters* framework that requires a phase two jury to reexamine the findings of a phase one jury in contravention of the Seventh Amendment. The questions to be addressed in each phase are different. The issue in the first phase of a *Teamsters* case is whether "discrimination was the company's standard operating procedure[,] the regular rather than the unusual practice." *Teamsters*, 431 U.S. at 336. If the plaintiff proves the existence of a pattern or practice of discrimination, a presumption arises that employment decisions made during the discriminatory

---

[8] Defendant also offers no explanation of why, if a particular form of relief were to present manageability concerns, the appropriate remedy would be to throw out the entire case and effectively immunize Defendant from any responsibility for a broad pattern of discrimination. The issue of manageability is a Rule 23 consideration that bears on class certification. Without explanation, Defendant treats "manageability" as if it were a complete defense to liability for employment discrimination. There is no authority holding that Title VII ceases to provide redress for an employer's discrimination because it is perpetrated too widely.

practice was in effect were made pursuant to that practice. *Id.* at 362. A phase one jury may also decide punitive damages, or at least eligibility for punitive damages. *See, e.g.*, *EEOC v. Darden Restaurants*, 2015 WL 13559889 (S.D. Fla. Nov. 9, 2015) (appropriateness of liquidated damages in ADEA case to be determined in phase I); *EEOC v. Outback Steak House*, 576 F. Supp. 2d 1202 (D. Colo. 2008) (phase I jury decides eligibility for punitive damages); *EEOC v. Dial Corp.*, 259 F. Supp. 2d 710 (N.D. Ill. 2003) (phase I jury decides punitive damages). Phase I proceedings do not determine liability with respect to any particular aggrieved individual; that task, along with the determination of individual relief, is left for the second phase. *Teamsters*, 431 U.S. at 361-62. Contrary to Defendant's assertion, the individualized matters to be determined in the second phase simply do not require reexamining the phase one finding that a general policy of discrimination exists.[9]

As Judge Higginbotham noted, "[i]t would be truly perverse to withhold the remedy of punitive damages from the EEOC when it targets discrimination in its most virulent and damaging form: policies intentionally calculated to exclude

---

[9] The cases cited in footnote 59 of the *Bass Pro* concurrence reflect various bifurcation approaches, and the concurrence itself also sketches a plan under which a jury determines liability and punitive damages, and then "the court ... conduct[s] the necessary individualized inquiries, including Bass Pro's defense that any given individual as rejected for employ for reasons other than the found pattern or practice of discrimination. The court must determine, perhaps with the assistance of a special master, the amount of back pay lost by each person denied employ by the found pattern or practice." *Bass Pro*, 865 F.3d at 233-34; *see also Pitre*, 908 F. Supp. 2d at 1176-79 (outlining bifurcation approaches).

protected minorities and perpetrated on a large scale." *Id.* at 232. "Pursuant to Title VII and the ADA, whenever the EEOC chooses from among the many charges filed each year to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief." *Waffle House*, 534 U.S. at 296.

Defendant's manageability concerns are also overstated, especially at a moment in litigation where it has not even filed an answer to the complaint. Parties and district courts routinely devise case management plans for large class cases. *See, e.g., Exxon Shipping Co. v. Baker*, 554 U.S. 471, 479-80 (2008) (litigation involving class of 32,000 plaintiffs seeking punitive damages; jury trial divided into separate liability, punitive damages, and compensatory damages phases). The liability stage finder of fact decides only whether an employer has engaged in a widespread pattern or practice of discrimination, while the relief stage finder of fact determines the appropriate remedies, including whether the defendant may rebut the general presumption of discrimination in individual cases. *See Teamsters*, 431 U.S. at 361-62; *Davis*, 516 F.3d at 966. The facts to be decided at each stage are different, and with respect to relief for any particular individual there is not "necessarily" overlap. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1185 (11th Cir. 2010) (findings binding only if they are "necessarily" part of jury

24

verdict). Accordingly, the Teamsters framework does not implicate the Seventh Amendment. *Id.*; *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 260, 268 (5th Cir. 1999) ("The Seventh Amendment does not prohibit bifurcation of trials as long as 'the judge [does] not divide issues between separate trials in such a way that the same issue is reexamined by different juries.'").

In sum, there is no specific bifurcation plan in place yet, so Defendant's arguments regarding reexamination issues are premature and speculative. The pleadings do not establish how large the class will be or how discovery will be conducted, and so Defendant's arguments regarding manageability cannot be raised (or meaningfully evaluated) at this juncture. The Court is well equipped by the Rules of Civil Procedure to develop a case management plan that does not offend the Constitution, as district courts have for decades.

## V.    CONCLUSION

Defendant's motion to dismiss is due to be denied. The EEOC is permitted to pursue an action seeking a full array of damages on behalf of a class of women aggrieved by Defendant using the pattern or practice method of proof under Section 706 of Title VII. Defendant should be instructed to answer the EEOC's complaint with no further delay.

Date: June 11, 2019                    Respectfully submitted,

                                       Marsha Rucker
                                       Regional Attorney

                                       Justin Mulaire
                                       Supervisory Trial Attorney

                                       Alysia Franklin
                                       Trial Attorney

                                       Christopher Woolley
                                       Trial Attorney

                                       */s/ Russell Parker*
                                       Russell Parker
                                       Trial Attorney

                                       EQUAL EMPLOYMENT
                                       OPPORTUNITY COMMISSION
                                       Birmingham District Office
                                       Ridge Park Place, Suite 2000
                                       1130 22nd Street South
                                       Birmingham, Alabama 35205
                                       (205) 212-2133
                                       russ.parker@eeoc.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 11, 2019, I filed the foregoing with the Clerk of the Court using the CM/ECF system which will electronically send notification of the filing to all attorneys of record.

*/s/ Russell Parker*
Russell Parker