FILED
2019 Jul-02  AM 10:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | CIVIL ACTION NO. |
| V. | ) | |
| | ) | 2:19-CV-00273-MHH |
| AMERICAN FREIGHT | ) | |
| MANAGEMENT COMPANY, LLC | ) | |
| | ) | |
| DEFENDANT | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Because the EEOC's complaint contains mismatched claims, damages, and proof models, the Court should grant American Freight's motion to dismiss. The precise problem with the complaint is that it seeks a particular remedy through a particular statute and a particular proof mechanism that do not permit it. This is a square peg and round hole situation. The foundational deficiency with the EEOC's position is, rather than relying on the shapes of the holes and pegs as they exist now, it counts on the shapes as they existed prior to the Civil Rights Act of 1991.

There is no binding authority that allows the EEOC to use the *Teamsters* proof mechanism to seek compensatory and punitive damages through Section 706 for an unknown group of individuals in a "pattern or practice" case. There *is* Eleventh Circuit authority, however, holding the *Teamsters* proof method is inappropriate

where, as here, a plaintiff seeks compensatory and punitive damages for a large group of individuals. The Court should deny the EEOC the opportunity to gain the advantage of the square peg post-1991 remedies while relying on the round hole pre-1991 case law.

## I.   The EEOC's Response Overstates the Status of the Law, as there is No Binding Authority Permitting the EEOC to Bring the Claim it Pled

The EEOC's Response suggests that the law is well-settled in its favor permitting it to do exactly what it seeks to do now. That is not true. Tellingly, the EEOC cites no Eleventh Circuit or Supreme Court precedent contemplating or endorsing the EEOC's use of Section 706 to use a pattern or practice framework to recover compensatory and punitive damages on behalf of allegedly aggrieved individuals. Its authority to do so is the precise question before this Court now, but there is no binding authority that permits it.

The EEOC's claim that it has been bringing these sorts of suits seeking legal— as opposed to equitable—remedies for decades without controversy and with wide-spread judicial approval is misleading at best. Judge Jolly of the Fifth Circuit noted just two years ago that the issue was one of first impression in that circuit, *EEOC v. Bass Pro Outdoor World, LLC*, 865 F.3d 216, 217 (5th Cir. 2017) (dissenting from a denial of an *en banc* petition), and there is no Eleventh Circuit authority that addresses the exact question. Not only is there no precedential circuit-level authority, not one of the district court opinions that squarely addressed this question and which

the EEOC cited comes from a court in this circuit. To be sure, some district court opinions from elsewhere have ruled in the EEOC's favor, but as highlighted in American Freight's brief, several other better-reasoned opinions have ruled in support of American Freight's position.

The EEOC overstates the judicial support for its position while at the same time it criticizes Judge Jolly's opinion as being persuasive authority alone. That is true. So is all of the authority cited by the EEOC. While there is no binding authority that addresses the precise question head-on, however, there is Eleventh Circuit precedent this Court should rely on in granting American Freight's motion.

## II.  The Civil Rights Act of 1991 Changed the Remedies Available Under Title VII, Rendering Prior Interpretations Limited or Inapposite

Whatever the state of the law may be in the Fifth or Sixth Circuits, in *this* Circuit, binding precedent recognizes that the Civil Rights Act of 1991 changed the game as it relates to claims, proof models, and available remedies under Title VII. "[T]he Civil Rights Act of 1991 . . . *changed the landscape* of employment discrimination law by making available compensatory and punitive damages (as well as the right to trial by jury) in Title VII cases." *Cooper v. Southern Co*., 390 F.3d 695, 720 n. 14 (11th Cir. 2004) (emphasis added) (overruled on other grounds).

Prior to the 1991 amendment, whether the plaintiff was the EEOC or an individual, the *only* remedies available for Title VII plaintiffs were equitable remedies, not legal remedies such as compensatory and punitive damages. *Id*. Thus,

when the Supreme Court and lower courts issued their opinions in the cases principally relied on by the EEOC—*General Telephone*, *Teamsters*, *Franks, et al.*—they did so in a world where compensatory damages and punitive damages were not even contemplated by those courts.[1]

While those cases may stand for the broad proposition that the EEOC can proceed under a pattern or practice proof model when seeking *equitable* remedies, they lose their precedential value when, as here, something different than equitable remedies are at stake. The EEOC did not bring this case in a pre-1991 amendment world and is not limiting the relief it seeks to that which was available under the pre-1991 Supreme Court precedent. That precedent, then, is of no consequence as to this particular issue, a fact already recognized by the Eleventh Circuit when it categorized the 1991 amendment as a "landscape changing" Act. *Cooper v. Southern Co.*, 390 F.3d at 720 n. 14.

## III. Eleventh Circuit Precedent Has Rejected the Use of the *Teamsters* Proof Model for Those Seeking Compensatory or Punitive Damages

The EEOC would have this court consider highly individualized compensatory and punitive damages using the *Teamsters* pattern or practice proof model that was created when compensatory and punitive damages were not

---

[1] The EEOC's brief is littered with citations to opinions from before the 1991 amendment or which originated outside this circuit.

available.[2] However, Eleventh Circuit precedent holds that the pattern or practice proof model is inappropriate when plaintiffs seek compensatory or punitive damages.

*Rutstein v. Avis Rent-A-Car Systems, Inc.* involved a would-be class that sought to obtain compensatory and punitive damages for alleged violations of federal anti-discrimination laws. 211 F.3d 1228 (11th Cir. 2000). The plaintiffs sought to avail themselves of the *Teamsters* pattern or practice proof model, but the Court rejected its applicability because of the individualized nature of legal damages. "The *Teamsters* framework is . . . inappropriate in the instant case because the establishment of a policy or practice of discrimination cannot trigger the defendant's *liability for damages* to all the plaintiffs." *Id.* at 1239 (emphasis added).

The difference between equitable remedies and money damages, which are necessarily based on individualized concerns, was the foundation of the Eleventh Circuit's holding. The court recognized the historical and precedential impact of *Teamsters* as being limited to situations where equitable remedies were at issue: "[M]ore important, the relief to which individual plaintiffs were entitled after a

---

[2] As already detailed in both the Motion and the Response, the *Teamsters* proof method is bifurcated, with the first part of the action requiring proof that an employer followed a regular practice of discrimination as its "standard operating procedure" and, only if the plaintiff succeeds at step one, do the parties proceed to step two, where the parties try whether particular individuals suffered some harm in furtherance of the employer's discriminatory practice. *See International Broth. of Teamsters v. U.S.*, 431 U.S. 324, 360 (1977).

finding of a pattern or practice of discrimination in *Teamsters* (and in all subsequent cases employing the *Teamsters* rationale) was *equitable* in nature." *Id*. at 1239.

The court reasoned that use of the *Teamsters* proof framework—created when equitable remedies alone were available—could not apply to a situation where one seeks compensatory and punitive damages that only arose under the post-1991 amendment state of the law. "To establish that they are entitled to compensation, plaintiffs will have to prove that they actually suffered some injury, whether it be emotional or otherwise. The idea that individual injury could be settled on a class-wide basis is preposterous." *Id*. The court concluded that permitting the action to proceed under the *Teamsters* proof method if compensatory damages are alleged would result in a "complete lack of judicial economy"—rendering the method unmanageable as a matter of law. *Id*. at 1240.

While the EEOC correctly points out that *Rutstein* was not an employment discrimination case (though it was a federal discrimination case), the EEOC does not explain how that affects the soundness of the court's reasoning and holding. If individualized compensatory and punitive damage issues are too individualized to adjudicate under *Teamsters*, *then they are too individualized*. The cause of those damages does not matter. The differing nature of individuals' hypothetical legal damages is what drove the Court's reasoning, not whether or not those damages arose in an employment context. *See id*. at 1239 (noting that compensatory damages

can include "damages for emotion and psychological distress," a necessarily individualized assessment). The EEOC's argument relies on an immaterial distinction.

The Eleventh Circuit reached a holding consistent with *Rutstein* in the employment discrimination context as well. In *Cooper v. Southern Co.*, the Eleventh Circuit considered class certification and the associated use of the *Teamsters* framework when individual plaintiffs sought non-equitable remedies. 390 F.3d 695 (11th Cir. 2004) (overruled on other grounds). The Court reasoned that it would be inappropriate to certify a Rule 23(b)(2) class—where legal remedies can be obtained only if they are incidental to equitable relief—because "determining the level of damages to which each class member was entitled plainly would require detailed, case-by-case fact finding, carefully calibrated for each individual employee." *Id*. at 721.

The Eleventh Circuit rejected the would-be class's argument that *Teamsters* itself and other pre-1991 precedent required the court to permit the class to proceed under the *Teamsters* pattern or practice proof model, recognizing that all of the cases relied upon by the putative class "predate the Civil Rights Act of 1991, which changed the landscape of employment discrimination law by making available compensatory and punitive damages (as well as the right to a trial by jury) in Title VII cases." *Id*. at 721 n. 14.  The court recognized that Congress altering the remedies

and processes available under Title VII left *Teamsters* and its associated pre-1991

authority outdated. The court noted the distinction:

> The cases relied on by the plaintiffs stand for the proposition that it may
> be appropriate to use a bifurcated or hybrid trial process in Rule
> 23(b)(2) cases when class-wide injunctive relief is appropriate,
> followed by individualized awards of *back pay*. Significantly, these
> cases do not hold that such a process is appropriate (much less required,
> as plaintiffs would have it) when highly individualized awards of
> compensatory damages are at stake.

*Id*. While the *Cooper* opinion arose out of a Rule 23 class certification issue rather

than a complaint brought by the EEOC in a pattern or practice claim, this difference

is immaterial. The Eleventh Circuit has long noted that a pattern or practice action

is analogous to Rule 23(b)(2) class claim relying on the same pattern or practice

proof method.  *See Davis v. Coca-Cola Bottling Co., Consol*., 516 F.3d 955, 965

(11th Cir. 2008) ("We have referred to such complaint [a pattern or practice claim]

as presenting a 'hybrid Rule 23(b)(2) class action.'"). The import of *Cooper* is that,

like *Rutstein*, it recognized that adjudicating legal remedies through *Teamsters* is not

the same as determining equitable remedies through the same *Teamsters* process.

The EEOC did not and could not cite an opinion wherein the Eleventh Circuit

or any district court within the Eleventh Circuit sanctioned the use of the *Teamsters*

proof model when compensatory and punitive damages are sought for a group of

people. Instead, the EEOC identified *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685

(N.D. Ga. 2001) as the lone support for the proposition that district courts in the

Eleventh Circuit have interpreted *Rutstein* as somehow demonstrating a partiality for the *Teamsters* model when compensatory or punitive damages are at issue. Not so.

Putting aside that *Ingram* involved a court's review and approval of a settlement, so the court was not even deciding anything about appropriate proof models or available damages under varying statutes, the dicta does not actually support the EEOC's position. The court noted that "in the context of this settlement, concerns about the management of individual issues are not relevant." *Id*. at 701. Far from considering the manageability and appropriateness of trying individual compensatory and punitive damages under *Teamsters*, the *Ingram* court explicitly observed that those concerns did not matter to its analysis because it was only reviewing the case for settlement purposes. The proof model and the issue of whether it could be used to try individual compensatory and punitive damages did not factor into the court's analysis in any way.

In another attempt to get around *Rutstein* and *Cooper*, the EEOC argues that the *Bass Pro* concurrence supposedly identified district court cases where courts approved the EEOC's use of *Teamsters* to seek compensatory and punitive damages. But the district court opinions identified were not from the Eleventh Circuit and those courts did not have to analyze the impact of *Rutstein* and *Cooper*, leaving them

on a separate island where the same considerations and precedent did not bind them as those that bind this court.

While the EEOC need not meet Rule 23's class certification requirements to bring suit, its enforcement attempts must still comport both with (1) the remedies available under the statutes it enforces and (2) collateral sources of law. The Eleventh Circuit already rejected the possibility of adjudicating compensatory and punitive damages at a hypothetical stage two of a *Teamsters* case. *Rutstein*, 211 F.3d at 1240. The court reasoned that permitting the action to proceed under the *Teamsters* proof method if compensatory damages are alleged would result in a "complete lack of judicial economy"—rendering the method unmanageable as a matter of law. *Id*. at 1240.

These are the same concerns articulated by Judge Jolly and the half of the Fifth Circuit that agreed with him that using the *Teamsters* proof method when compensatory or punitive damages are sought would result in an unmanageable, and thus impermissible, lawsuit. *See Bass Pro*, 865 F.3d at 219 ('[A]llowing pattern or practice suits for individualized compensatory and punitive damages poses insurmountable manageability concerns."). Judge Jolly correctly identified recent Supreme Court precedent as supporting this conclusion. "These concerns of due process and practicality guided the Supreme Court's decision to deny a mass remedy in [*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)]." *Bass Pro*, 865 F.3d at

222.   Judge Jolly and half of the Fifth Circuit reasoned that those due process concerns, as articulated by the Supreme Court, precluded the availability of compensatory and punitive damages using the *Teamsters* proof model. For the same reason, this court should deny the EEOC the opportunity to obtain a mass *legal* remedy for the harms it alleges now.

In its Response to American Freight's motion, the EEOC recognized the impact of different proof and remedies on the appropriateness of the *Teamsters* proof framework. In attempting to distinguish an opinion American Freight cited in its brief, the EEOC argued it was "distinguishable on the ground that it involved hostile work environment claims that are less susceptible to pattern or practice proof." (Doc. 30 at 12 (discussing *EEOC v. CRST Van Expedited, Inc.*, 611 F. Supp. 2d 918 (N.D. Iowa 2009)).   The EEOC is exactly right. The type of remedies sought directly impacts the appropriateness of the *Teamsters* model, and when remedies or proof are too individualized—like compensatory or punitive damages as recognized by the Eleventh Circuit or hostile work environment proof as recognized by the EEOC in its Response—then *Teamsters* is inappropriate.

In short, the Eleventh Circuit has twice recognized that the pre-1991 authority relied on by the EEOC no longer decides the issue because of the "landscape changing" nature of the Civil Rights Act of 1991. More importantly, the Eleventh Circuit held that using a bifurcated process where compensatory and punitive

11

damages are tried in a hypothetical second stage as contemplated by *Teamsters* is unmanageable as a matter of law.[3] *Rutstein,* 211 F.3d at 1239. Based on Eleventh Circuit precedent, the EEOC cannot recover compensatory and punitive damages using the *Teamsters* proof method.

## IV.   The Statutory Text of Section 706 is Different than Section 707

Further, as noted in American Freight's initial brief, the text of the statutes themselves precludes the EEOC's efforts here to obtain compensatory or punitive damages using a pattern or practice framework.  Section 706, which provides for potential compensatory and punitive damages, and Section 707, which does not, have different words. Section 707 describes the conduct with which it is concerned as "pattern or practice" several times while Section 706 never does. *Compare* 42 U.S.C. § 2000e-5 (Section 706) and 42 U.S.C. § 2000e-6 (Section 707). When Congress amended the available remedies and procedure in 1991, it did so *only* with respect to one of the statutes, Section 706, while leaving the other, Section 707, alone.  The different words in the statutes and Congress's amendment to only one of them must mean something. *See United States v. Haun*, 494 F.3d 1006, 1010 (11th

---

[3] The EEOC's suggestion in its Response that proceeding in this manner would be manageable is similar to the same one criticized by Judge Jolly's half of the Fifth Circuit. That is, according to the EEOC, it would be manageable because the EEOC says it would be manageable.  Even the *Bass Pro* panel opinion on which the EEOC now relies conceded, "[t]he EEOC's pursuit of compensatory damages may prove more difficult to administer" under *Teamsters*, and "bifurcation under *Teamsters* may struggle here to slice liability and damage." *EEOC v. Bass Pro Outdoor World, LLC*, 826 F.3d 791, 803 (5th Cir. 2016).

Cir. 2007) (noting courts interpreting statutory language should be "[b]uoyed by [their] common sense").

The EEOC thinks these differences are unimportant, instead pointing out that that the two statutes have other differences. But that does not render the repeated inclusion of "pattern or practice" in one statute and its complete omission from the other immaterial. "Courts are required to give effect to Congress' express inclusions and exclusions, not disregard them." *National Ass'n of Mfrs. v. Dept. of Defense*, 138 S. Ct. 617, 631 (2018).

## V.     The Court Can Dismiss the EEOC's Section 706 "Pattern or Practice" Claim at this Procedural Stage because it is Internally Inconsistent Insofar as it Seeks Compensatory and Punitive Damages

The EEOC, as the plaintiff, is the master of its complaint. In its complaint, it identified both a statutory grounds for its claim, Section 706, and a proof method it intends to use, *Teamsters* pattern or practice.[4] Having put both the Court and American Freight on notice of the issue of those concepts' potential congruence, the EEOC alleges now that the Court cannot decide whether the two can be used in the same case. The EEOC is wrong.

While "pattern or practice" is a proof framework, the Eleventh Circuit previously recognized that it has long been associated with Section 707 alone:

---

[4] The complaint may contain these two items, but it identifies no individuals for whom the governments seeks relief, an independent basis for dismissal contained in American Freight's brief in support of its motion to dismiss. [Doc. 9].

> Regardless of what Congress may or may not have intended, the phrase [pattern or practice] has come through common usage to represent the sum total of the evils Congress intended to attack in § 707(a) of the Civil Rights Act of 1964. We use it thus.

*Davis v. Coca-Cola Bottling Co. Consol*, 516 F.3d 955, 965 n. 17 (11th Cir. 2008) (internal citations omitted) (abrogated on other grounds). The issue before the Court now is whether a proof method long paired with only one statute in a particular situation, Section 707, can be used in association with another, Section 706. To put a finer point on it: Can the EEOC seek compensatory and punitive legal damages under Section 706 using the *Teamsters* framework previously only recognized in this circuit as appropriate for equitable remedies?

The issue of available remedies is appropriate for adjudication at the motion to dismiss stage. *See, e.g., Thompson v. City of Muscle Shoals, Ala*., No. 3:12-CV-01686-CLS, 2012 WL 4815466, at *4 (N.D. Ala. Oct. 20, 2012) (granting a 12(b)(6) motion to dismiss as to punitive damages); *Porciello v. Bank of America, N.A.*, No. 8:14-cv-1511-T-17AEP, 2015 WL 899942, at *3 (M.D. Fla., March 3, 2015) (adjudicating the availability of statutory damages on a motion to dismiss); *Williams v. Allen*, No. 7:13-CV-86 (HL), 2014 WL 2547804, at *1 (M.D. Ga. June 5, 2014) (granting a motion to dismiss as to claimed compensatory damages). The EEOC put the issue of available remedies before the Court when it identified its statutory basis, the remedies it seeks, and an incongruent proof model that does not afford those remedies. The issue is ripe and ready for adjudication, and doing so will aid the

14

parties in litigating the presumptive remaining/amended claims, as the parties will not have to guess at the scope of discovery.

And, contrary to the EEOC's strawman argument that ruling for American Freight would somehow deny the EEOC the means to remedy alleged discrimination, such a ruling would only require that the EEOC pursue appropriate remedies under the appropriate statutes. The square pegs must go in the square holes and the round pegs must go in the round ones. The EEOC's suggestion that disallowing it from mixing and matching its pegs would put employers outside the scope of Title VII is disingenuous.

## VI.   Conclusion

For the reasons detailed above, but also those highlighted in its Motion and Supporting Brief [Doc. 9], Defendant American Freight Management Company, LLC respectfully requests that the Court grant its motion and dismiss Plaintiff's complaint.

Respectfully submitted,


s/ Jennifer F. Swain
Jennifer F. Swain
Patrick D. Schach

Attorneys for Defendant

**OF COUNSEL:**
**LITTLER MENDELSON, P.C.**
420 20th Street North, Suite 2300
Birmingham, Alabama 35203
(205) 421-4700 telephone
(205) 421-4699 facsimile
jswain@littler.com
pschach@littler.com

## CERTIFICATE OF SERVICE

I certify that on July 2, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Marsha L. Rucker
Russell P. Parker
Alysia Desiree Franklin
Christopher Woolley
EEOC
1130 22nd Street South, Suite 2000
Birmingham, AL 35205

James L. Lee
EEOC
1801 L Street NW
Washington, DC 20507

Gwendolyn Young Reams
EEOC
131 M. Street E
Washington, DC 20507

Justin Mulaire
EEOC
33 Whitehall Street, Floor 5
New York, NY 10004

s/ Jennifer F. Swain
OF COUNSEL